INSURANCE COMPANY OF the STATE
OF PENNSYLVANIA,
Plaintiff-Appellant,

v.

WEST PLAINS AIR, INC., et al.,
Defendants-Respondents.

No. 12301.

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 1982.

Motion for Rehearing or to Transfer to
Supreme Court Denied Aug. 18, 1982.

Application to Transfer Denied
Sept. 13, 1982.

R. Lynn Myers, Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for plaintiff-appellant.

Kenneth A. Wagoner, Moore, Brill & Wagoner, P. C., West Plains, for defendants-respondents West Plains Air, Inc., Flying K Air Service, Inc., Charlene Beth Harris, and First Nat. Bank of West Plains.

Clyde A. Butts, Garrett & Butts, West Plains, for defendants-respondents Duane Benton, Rowland Paul, Donna Paul, Jack Freeman and Judith Freeman.

TITUS, Judge.

The named insureds in an aviation insurance policy issued by plaintiff insurance company were West Plains Air, Inc., and Flying K Air Service, Inc. Liability coverage for bodily injury and property damage and physical damage coverage, inter alia, to a single-engine Beech A 35 aircraft, were provided by the insurance contract. First National Bank of West Plains was policy-designated as loss payee for property damage to the aircraft. Flying K owned the airplane and leased it to West Plains Air which employed the aircraft in its air taxi service for hire. The lessee was duly licensed by the Federal Aviation Administration (FAA) to operate the air taxi service and it employed Mrs. Harris as a pilot for such purposes. During the policy period and while piloted by Mrs. Harris, the airplane, with three passengers aboard, crashed in the state of Iowa injuring all occupants. The passengers et uxores filed suit in Iowa against the plane's owner, lessee and pilot for damages. Defendants in the damage suit called upon plaintiff-insurer to defend the damage suit and to pay any judgments which might be rendered against them; the loss-payee-bank demanded payment for physical damage to the plane. Plaintiff then instituted this declaratory judgment action against all interested parties to have its policy declared inapplicable to the casualty for the reasons hereinafter observed. Following trial, wherein most all facts were stipulated, the trial court adjudged the policy to have been in full force and effect at the time of the accident. Plaintiff insurance company has appealed.

Item 5 of the policy's Declarations (added by typewritten endorsement) provides "IT IS AGREED THAT: ... When in flight the aircraft will be piloted only by ... Any commercial pilot properly certificated by the FAA having a minimum of 750 logged solo flying hours or pilot in command hours, 100 of which are in retractable gear aircraft, including 5 hours in the make and model aircraft." The Exclusions portion of

the policy, inter alia, states: "This policy does not apply: ... 2. To any insured while the aircraft is in flight ... (b) if piloted by a pilot not properly certificated, qualified and rated under the current applicable Federal Air Regulations for the operation involved, whether or not said pilot is designated in the Declarations; ...."

Plaintiff cedes that at the time of the accident Mrs. Harris possessed a commercial pilot's certificate issued by the FAA which was in good standing and that she had logged the number and kind of flying hours specified in Item 5 of the policy's Declarations, supra. Nevertheless, plaintiff contends Exclusion 2(b), supra, relieves it of liability because Mrs. Harris "had not received her required check ride and certification from the Federal Aviation Administration ...." This contention is predicated upon the provisions of Sec. 135.293, Vol. 14 of the Code of Federal Regulations, Aeronautics and Space, which, in part, states: "§ 135.293 Initial and recurrent pilot testing requirements. (a) No certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral test, given by the Administrator or an authorized check pilot, on that pilot's knowledge in the following areas—.... (b) No certificate holder may use a pilot, nor may any person serve as a pilot, in any aircraft unless, since the beginning of the 12th calendar month before that service, that pilot has passed a competency check given by the Administrator or an authorized check pilot in that class of aircraft .... (e) The Administrator or authorized check pilot certifies the competency of each pilot who passes the knowledge or flight check in the certificate holder's pilot records."

■ Again we note: Rules and regulations of a federal agency promulgated pursuant to Congressional authority have the force and effect of law and courts of this state will judicially notice them, including those promulgated by the FAA. *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883, 887[1] (Mo.App.1977); *Fredrick v. Bensen Aircraft Corporation*, 436 S.W.2d 765, 769–770[3–4] (Mo.App.1968).

■ In the appellate review of this court-tried case, this tribunal reviews both the law and the evidence giving due regard to the superior opportunity of the trial court to judge the credibility of witnesses. The trial court's judgment is to be sustained unless there be no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *St. Louis County Nat. Bank v. Maryland Cas. Co.*, 564 S.W.2d 920, 924 (Mo.App. 1978). Except for the oral testimony of Mrs. Harris and the president-manager of the named insureds in plaintiff's policy, all other evidence was documented or stipulated. Consequently, this court's duty to give due regard to the opportunity of the trial judge to have judged the credibility of witnesses as provided in Rule 73.01(c)(2), V.A. M.R., has no application here except as the rule applies to witnesses actually heard by the court. *Cameron Mut. Ins. Co. v. Chitwood*, 609 S.W.2d 492, 493–494[3] (Mo.App. 1980).

■ An insurer seeking to escape liability solely upon a policy exclusion as 2(b), supra, has the burden of proving and establishing facts making it applicable. Exclusionary clauses in insurance contracts are to be strictly construed. If they are ambiguous, courts must adopt a construction favorable to the insured. Provisions and terms of policies must be seen as a whole and conclusions arrived at should afford the contract a reasonable interpretation consistent with the apparent object and intent of the parties thereto. Policies must be given a reasonable construction in accordance with their terms and interpreted so as to afford coverage when reasonably possible to do so rather than to defeat coverage. Provisions in policies which prove to be ambiguous cannot be successfully employed as policy defenses. Courts frown on forfeitures, especially where they are the result of technical provisions written into the policy by the insurer. Forfeitures should never be permitted unless the right is clearly and

certainly established. *Allison v. National Insurance Underwriters*, 487 S.W.2d 257, 262[1–5] (Mo.App.1972), 92 A.L.R.3d 1255. Moreover, the printed policy exclusion, i.e., exclusion 2(b), supra, and the typewritten-added endorsement, i.e., Item 5 of the declarations, supra, must be read together when there is a question as to their meaning and must be construed together unless they are irreconcilable. If the typewritten endorsement conflicts with the general provisions of the policy, the endorsement will prevail and the policy remains effective as altered by the endorsement. *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193, 198[2, 3] (Mo. banc 1977).

In support of its claim the policy here was inapplicable to the casualty in question, plaintiff relies principally upon *Macalco, Inc. v. Gulf Ins. Co.*, supra, 550 S.W.2d 883. However, we perceive little or no resemblance between the policy provisions and conditions involved in *Macalco* and those present in the instant matter. In *Macalco* the plane involved in the fatal accident was carrying two passengers and was piloted by a person holding only a student pilot's certificate. The *Macalco* policy excluded coverage when the plane was operated by a student pilot unless the flight was "with the specific advance approval of and under the supervision and control of" an FAA certified commercial instructor pilot. No such approval was had for the flight and neither passenger was an FAA certified commercial instructor pilot. Also, in *Macalco* coverage was applicable only when the aircraft was being operated by a pilot holding the proper certificate and rating required by FAA "for the flight involved" and the student pilot held no such certification and rating. The germane FAA regulation applicable in *Macalco* prohibited a student pilot from acting as "pilot in command", i.e., the "pilot responsible for the operation and safety of an aircraft during flight . . . ." Contrary to the situation in *Macalco*, in the case before us Mrs. Harris, the pilot, was properly FAA certified, qualified and rated as a commercial pilot for the flight involved as specified in the policy's exclusions and additionally possessed the number and kinds of flying hours specified in the policy's declarations.

The evidence and stipulations in the instant case demonstrated that at the time of the casualty the pilot, Mrs. Harris, met all of the specifications and requirements enumerated in Item 5 of the Declarations and 2(b) of the Exclusions in plaintiff's policy. Our attention has not been directed to, nor have we found, any policy provision which undertakes to exclude or suspend coverage for noncompliance with an FAA regulation which does not nullify earned pilot experience credits or invalidate the type and kind of commercial pilot certification required by the insurance agreement. Section 135.293 of the FAA regulations, upon which plaintiff relies, does not state that failure to take the specified check ride, which Mrs. Harris had requested but had not received, would revoke or suspend her commercial pilot's license or serve to eradicate experience credits previously earned. Nevertheless, it is the policy itself, not the FAA regulations, that sets the perimeters of insurance coverage. Nothing in plaintiff's policy serves to create as exclusions or exceptions to coverage the violation of every proscription contained in the FAA regulations. *Ranger Insurance Company v. Culberson*, 454 F.2d 857, 864 (5th Cir. 1971). If the policy be augmented as plaintiff wants, the insuring agreement, in effect, becomes illusory as few accidents occur save some violation of the detailed regulations promulgated by FAA. *Roach v. Churchman*, 431 F.2d 849, 853 (8th Cir. 1970). Exclusionary clauses, such as Exclusion 2(b), are to be construed strongly against the insuror and in favor of the insured. The insuror must express its intention within such clauses by unambiguous and clear terms. *Citizens Ins. Co. of N. J. v. Kansas City, Etc.*, 611 S.W.2d 302, 307[5] (Mo.App. 1980).

Predicated upon the authorities, principles and factual considerations heretofore noted, we conclude the trial court did not err in declaring the policy to be in full force and effect at the time of the accident and, therefore, affirm the judgment nisi.

GREENE, P. J., and FLANIGAN, J., concur.