Charles McRAVEN, et ux., Plaintiffs-Respondents,

v.

F-STOP PHOTO LABS, INC., Defendant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Garnishee-Appellant.

No. 12997.

Missouri Court of Appeals, Southern District, Division One.

Oct. 31, 1983.

Bruce McCurry, Dickey, Allemann, Chaney & McCurry, Springfield, for plaintiffs-respondents.

B.H. Clampett, Paul D. Rittershouse, Daniel, Clampett, Rittershouse, Dalton, Powell & Cunningham, of Springfield, for garnishee-appellant.

TITUS, Judge.

Defendant agreed to make color photographic prints from color picture slides furnished by plaintiffs. Alleging that defendant breached its warranty to reproduce in the prints the color and quality reposed in the slides, plaintiffs sued defendant and, via a jury verdict, were awarded $3,920 in damages. Judgment on the verdict was entered "for breach of warranty of fitness or quality of [defendant's] products, namely, color prints." To obtain payment of the judgment plus interest thereon, plaintiffs garnished the insurer-garnishee herein which had issued a liability insurance policy to defendant. In the trial of the garnishment action, the jury returned a verdict for plaintiffs in the sum of $4,320.30 and garnishee appealed.

Inter alia, garnishee here complains anent the trial court's denial of its motion for directed verdict made at the conclusion of plaintiffs' evidence. When this motion was denied garnishee offered evidence of its own and, in so doing, waived any right to appellate review of the correctness vel non of the court nisi's denial of its motion made at the close of plaintiffs' case. *Dockery v. Mannisi*, 636 S.W.2d 372, 375[1] (Mo.App.1982); *Alexander v. Estate of Groves*, 618 S.W.2d 233, 236[5] (Mo.App. 1981). Garnishee also complains that the court nisi erred in denying its motion for a directed verdict made at the close of all of the evidence. Under Rule 72.01(a) [1] "A motion for directed verdict shall state the specific grounds therefor." In its second motion for directed verdict (as in the first) garnishee's grounds therefor were that the evidence was insufficient in law to support or form a basis for a verdict in favor of plaintiffs, that plaintiffs failed to make a submissible case, that no evidence was adduced which raised a jury question on whether or not garnishee's policy afforded

1. References to rules are to Missouri Rules of Court, V.A.M.R.

coverage and that, as a matter of law, there was no policy coverage. These bare generalities, contrary to rule mandates, do not approach stating "specific grounds" as to why the motion for directed verdict should have been sustained. Such nonspecifics, all of which boil down to a contention that plaintiffs failed to make a submissible case, were wholly insufficient to preserve anything for appellate review. *Wilkerson v. State Farm Mutual Automobile Ins. Co.,* 510 S.W.2d 50, 56[7] (Mo.App.1974); *Shell-Con, Inc. v. Architectural Concrete, Inc.,* 486 S.W.2d 662, 663[1] (Mo.App.1972); *Quality Dairy Co. v. Openlander,* 456 S.W.2d 608, 609[1] (Mo.App.1970). Also, in the absence of a motion for directed verdict which complies with the mandates of Rule 72.01(a), garnishee's post-verdict motion for judgment n.o.v. is without basis and preserves nothing for appellate review. *Christ v. Tice,* 578 S.W.2d 319, 322[3] (Mo.App. 1979).

Nevertheless we look to the merits, if any, and with all candor openly admit unbridled plagiarism of the exceedingly excellent opinion of the most learned trial jurist in the cause. The policy of insurance involved consists of 22 finely printed pages, to which have been added some six pages of endorsements, etc. Thankfully, as briefed by the parties on appeal and as observed by the trial court, the only section of the policy that needs consideration is "Section II—Business Liability and Medical Expense Insurance" and "Exclusions" 1 and 10 thereunder. The two exclusions appear on different policy pages (pages 14 and 15) and are separated by nine other exclusions containing an additional 12 exclusions listed in subparagraphs. The exclusions involved herein read:

"This insurance does not apply:

1.  to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

\*　　\*　　\*　　\*　　\*　　\*

10.  to loss of use of tangible property which has not been physically injured or resulting from

    a.  a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

    b.  the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

    but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured[.]"

In the circuit court and here, garnishee principally relies on *St. Paul Fire & Marine Insurance Company v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978) and *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979) while plaintiffs mainly rely on *Applegren v. Milbank Mutual Insurance Company,* 268 N.W.2d 114 (N.D.1978); *Commercial Union Assurance Companies v. Gollan,* 118 N.H. 744, 394 A.2d 839 (1978) and *Fontainebleau Hotel Corp. v. United Filigree Corp.,* 298 So.2d 455 (Fla.App.1974), cert. denied 303 So.2d 334 (Fla.1974).

As observed by the learned trial judge, albeit by following *St. Paul Fire & Marine,* supra, and *Weedo,* supra, garnishee may have shown there was questionable or no coverage in this case, "the courts in those cases found it necessary to go through some judicial acrobatics in order to come to the conclusion that there was no coverage." If policy language is ambiguous, it will be construed in Missouri against the insurer and not by judicial acrobatics. Such language is ambiguous if it is reasonably open to different constructions, and language

used in a policy should be viewed in light of the meaning that would ordinarily be understood by the layman who bought and paid for the policy. *Robin v. Blue Cross Hospital Service, Inc.,* 637 S.W.2d 695, 698[2] (Mo. banc 1982), and cases there cited.

We, as did the trial court, agree with the pronouncements found in the reported cases cited by plaintiffs. E.g., *Applegren,* supra, at 118: "In examining and construing the policy, we find that paragraph (a) [exclusion 1 in garnishee's policy] contains an exclusion to an exclusion, or, to state it another way, an exception to an exception. The controlling language is: 'but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.' This clearly means that the policy covered and applied to the insured's warranties that the work would be performed in a workmanlike manner. We can reach no other conclusion." *Commercial Union,* supra, 394 A.2d at 842: "If Commercial Union intended exclusion (*o*) [exclusion 10 in garnishee's policy] to modify or negate exclusion (a) [exclusion 1 in garnishee's policy], the exclusions should have been physically placed so that any reasonable person in the position of the insured would have understood that they be read together." *Fontainebleau,* supra, at 459 after quoting what was essentially the same as exclusion 1 in garnishee's policy: "If you were the insured, would you not consider this to mean that you were covered if you did not perform in a workmanlike manner?" and "[T]he terms of an insurance policy should be given their everyday meaning as understood by the 'man-on-the-street.'"

■ Exclusionary clauses in insurance contracts are to be strictly construed against the author thereof and if they are ambiguous, courts are compelled to adopt a construction favorable to the insured. Insurance policies must be considered as a whole and reasonably interpreted so as to be consistent with the apparent object and intent of the parties thereto. Such contracts should be considered as affording coverage whenever it is reasonably possible to do so and policy provisions which prove to be ambiguous may not be successfully used as policy defenses. *Insurance Co., etc. v. West Plains Air, Inc.,* 637 S.W.2d 444, 446[6–10] (Mo.App.1982). In a garnishment action, such as we have here, plaintiff stands in the shoes of the defendant-insured and may recover from the garnishee-insurer what defendant might have recovered in a separate action against the garnishee. 38 C.J.S. Garnishment § 176, at 396.

■ One exclusion or exception to exclusion 1 in garnishee's policy, supra, was that the exclusion was not to apply "to a warranty of fitness or quality of the named insured's products." As seen in the first paragraph of this opinion, the judgment entered in plaintiffs' favor and against the defendant-insured was predicated on a "breach of warranty of fitness or quality of [defendant's] products, namely, color prints," which is exactly what the exception to exclusion 1 provided.

As expressed in the petition, the gist of plaintiffs' claim against defendant was that in exchange for plaintiffs' agreement to pay therefor, defendant contracted that it would produce color prints from color slides furnished by plaintiffs that would be of the same color and quality of color as the slides but that defendant, in breach thereof, developed color prints which were not of the same color or quality of color as the slides and that plaintiffs thereby suffered damages because they were unable to provide their customer, as previously promised, with usable color prints of the color slides.

For exclusion 10, supra, to come into play, plaintiffs' claim against defendant-insured would have to be bottomed on "loss of use of tangible property . . . resulting from" the situations enumerated in subparagraphs a. and b. of the exclusion. As previously noted, plaintiffs were not claiming damages of defendant because of "loss of use" of their color slides but, rather because defendant failed to produce color prints as warranted for fitness or quality. We, as did the trial court, can see no relevancy of

exclusion 10 when applied to the specific claims made by garnishee.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.