BOND BROS., INC. vs. ODELL ROBINSON & another[1]; THE
AMERICAN INSURANCE COMPANY, third-party defendant.

Middlesex. March 6, 1984. — December 18, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Insurance,* General liability insurance, Contractor's insurance, Construc-
tion of policy. *Contract,* Insurance. *Practice, Civil,* Appellate Division:
decision.

A provision in a construction contractor's policy of comprehensive general
liability insurance which explicitly excluded coverage for breach of
contract and poor workmanship by the insured presented no ambiguity
when read with an exception which related solely to a different exclu-
sionary provision, nor did the two provisions, considered together, give
rise to any objectively reasonable expectation of such coverage. [548-
552] ABRAMS, J., with whom LIACOS, J., joins, dissenting.
It was of no consequence that the prevailing party in a case correctly decided
by the Appellate Division of the District Court Department did not argue
to the Appellate Division the ground on which its decision was based.
[552]

CIVIL ACTION commenced in the First Eastern Middlesex
Division of the District Court Department on March 7, 1979.

The case was heard by *John B. Murphy, Jr.,* J.

*Kieran B. Meagher* for D & R Steel Erectors, Inc., &
another.

*Edward W. Waystack* for The American Insurance Company.

WILKINS, J. The plaintiff general contractor obtained a judg-
ment against the defendant subcontractor based on claims of
breach of contract, breach of warranty, and negligence in the
erection of reinforcing steel in a wall of a power substation
constructed under a contract with the Massachusetts Bay
Transportation Authority (MBTA). This appeal concerns the
question whether a comprehensive general liability insurance

[1] D & R Steel Erectors, Inc. (D & R). Odell Robinson was the principal
of D & R, and was the field supervisor for D & R on this project.

policy issued to the subcontractor by the third-party defendant, The American Insurance Company (American), provides indemnity for the subcontractor's liability to the plaintiff general contractor.

This third-party action between the subcontractor and its insurer American was submitted to a District Court judge on a statement of agreed facts. Without any explanation for his decision, the judge concluded that the policy did not provide coverage. On report to it, the Appellate Division of the District Courts agreed with the trial judge's conclusion and dismissed the report. We affirm the order of the Appellate Division dismissing the report.

In August, 1978, the subcontractor contracted with the general contractor to install reinforcing steel and welded wire mesh (rebar work) in connection with concrete construction for the power station. The contract required the subcontractor to furnish evidence that it had comprehensive general liability insurance coverage for the work to be performed. After the subcontractor advised the general contractor that the rebar work had been completed for the north wall, the general contractor poured concrete into the form. In fact, a portion of the rebar work had not been performed and, as the MBTA discovered, the wall did not meet design criteria, was structurally unstable, and required remedial work. The general contractor advised the subcontractor that it would hold the subcontractor liable for the cost of the remedial work. The subcontractor notified American of the claim. The general contractor did the work and advised the subcontractor of the cost. American denied coverage of the loss and declined to defend the general contractor's claim.

As we have said, the general contractor obtained judgment against the subcontractor, and American was successful in its defense of the subcontractor's third-party action against it. This appeal involves only the question whether American's comprehensive general liability insurance policy covers the subcontractor's loss.

We need not consider all the arguments made by American because we conclude, as did the Appellate Division of the Dis-

trict Courts, that any coverage of the loss is excluded by an explicit exclusion in the policy. We reach this conclusion because we see no ambiguity in the policy or uncertainty in the circumstances which would justify denying effect to the explicit exclusion. Exclusion (y) (2) (d) (iii) eliminates coverage for property damage to "that particular part of any property, not on premises owned by or rented to the insured . . ., the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." This exclusion, standing alone, denies coverage for faulty workmanship of the character involved in the subcontractor's rebar work. The subcontractor does not argue otherwise to us.

The subcontractor claims that another exclusion in the policy, exclusion (a), creates such an ambiguity concerning coverage that, under principles of strict construction of exclusions against insurers, we should conclude that coverage was available. See *Vappi & Co.* v. *Aetna Casualty & Sur. Co.,* 348 Mass. 427, 431 (1965). Cf. *Beacon Textiles Corp.* v. *Employers Mut. Liab. Ins. Co.,* 355 Mass. 643, 645 (1969). Exclusion (a) has been included in substantially the same form in comprehensive liability insurance policies issued in this country in recent years. It provides that coverage does not apply "to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner*" (emphasis supplied).

The subcontractor argues that the italicized language, stating an exception to the exclusion, provides coverage for breach of a warranty (even as part of a contractual arrangement) that work will be done in a workmanlike manner. At least, the contractor argues, the combination of exclusion (y) (2) (d) (iii) and the exception in exclusion (a) creates an apparent ambiguity that must be construed in its favor. We reject this view in accord with the distinct weight of authority and better reasoned opinions elsewhere in the country dealing with similar claims.

No insured in these circumstances can reasonably conclude that the exception to exclusion (a) makes irrelevant another exclusion in the policy that explicitly denies coverage. Of course, as American notes in its brief, when read alone and quickly, exclusion (a) provides some hope. Reading exclusion (a), an insured would recognize that he was still in the running as to losses resulting from certain warranties. However, there are other exclusions that cannot reasonably be ignored. We flatly reject the concept that, because exclusion (a) excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an objectively reasonable expectation of coverage, when it is confronted with another explicit exclusion.

Because, as we have said, exclusion (a) has been common to many comprehensive general liability insurance policies, the issue of exclusion (a)'s interrelationship with other policy exclusions has arisen numerous times elsewhere.[2] There is a split of authority on the treatment of exclusion (a) but the weight of authority, and almost all recent authority, denies coverage in similar cases. Opinions denying coverage are better reasoned and give a balanced treatment to the exclusion. Those opinions in chronological order are: *Haugan* v. *Home Indem. Co.,* 86 S.D. 406, 413 (1972) ("Exclusion [a] does not extend or grant coverage. . . . The exception remains subject to and limited by all other related exclusions contained in the policy"); *Biebel Bros.* v. *United States Fidelity & Guar. Co.,* 522 F.2d 1207, 1212 (8th Cir. 1975) (The exception in exclusion [a] "is limited to exclusion [a] and has no application whatsoever to exclusions [l] or [m] or the others here under scrutiny"); *St. Paul Fire & Marine Ins. Co.* v. *Coss,* 80 Cal. App. 3d 888, 896 (1978) ("[E]xclusion [a] is not in conflict with the other exclusions; therefore, we do not find the ambiguity urged by [the insured]"); *Weedo* v. *Stone-E-Brick, Inc.,* 81 N.J. 233, 247 (1979) (6-1 decision) ("In this case [the insured's] interpretation of the policy would result in coverage for repair and

---

[2] The particular exclusion on which an insurer has relied has not always been the same, but that fact is irrelevant to the issue of the effect of exclusion (a).

replacement of its own faulty workmanship. This interpretation relies on the supposition that the exception to exclusion '[a]' . . . *grants* coverage for claims based on the warranty described. Not so. The contention runs directly counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant it" [emphasis in original]); *U.S. Fire Ins. Co.* v. *Colver,* 600 P.2d 1, 3-4 (Alaska 1979) ("In this case, we are unable to agree that the relevant exclusion clauses in the insurance contracts, when taken together, could be reasonably interpreted by a lay-person as providing coverage for damages to the insured's work product. . . . While we recognize that Exclusion [a] may have been somewhat confusing to the insured, the subsequent exclusions gave him full notice that property damage to his work or work product, arising out of his work or work product, would not be covered by the policy"); *Vernon Williams & Son Constr.* v. *Continental Ins. Co.,* 591 S.W.2d 760, 763-765 (Tenn. 1979) (quoting extensively from the New Jersey opinion in *Weedo* v. *Stone-E-Brick, Inc., supra*); *LaMarche* v. *Shelby Mut. Ins. Co.,* 390 So. 2d 325, 326-327 (Fla. 1980) (relying on the *Weedo* case and disapproving *Fontainebleau Hotel Corp.* v. *United Filigree Corp.,* 298 So. 2d 455 [Fla. Dist. Ct. App. 1974]); *Indiana Ins. Co.* v. *DeZutti,* 408 N.E.2d 1275, 1278-1279 (Ind. 1980) (same); *Stillwater Condominium Ass'n* v. *American Home Assurance Co.,* 508 F. Supp. 1075, 1079 (D. Mont. 1981), aff'd, 688 F.2d 848 (9th Cir. 1982), cert. denied, 460 U.S. 1038 (1983) ("[T]he coverage supposedly 'granted' by the exception to exclusion [a] has already been granted in the insuring provision. Having been granted in the insuring provision, that coverage is subject to the limitation of each and every exclusion"); *Zandri Constr. Co.* v. *Firemen's Ins. Co.,* 81 A.D.2d 106, 109 (N.Y.), aff'd, 54 N.Y.2d 999 (1981) (relying on the reasoning of the *Weedo* opinion); *Nationwide Mut. Ins. Co.* v. *Wenger,* 222 Va. 263, 267 (1981) (relying on the *Haugan* and *Weedo* opinions); *Helfeldt* v. *Robinson,*      W.Va.      ,      (1981) (290 S.E.2d 896, 901 [W. Va. 1981]) (relying on *Indiana Ins. Co.* v. *DeZutti, (supra)*; *Qualls* v. *Country Mut. Ins. Co.,* 123 Ill. App. 3d 831, 834 (1984) (relying on the *Weedo* opinion); *Harrison*

*Plumbing & Heating, Inc.* v. *New Hampshire Ins. Group,* 37 Wash. App. 621 (1984) (same); *Sturla, Inc.* v. *Fireman's Fund Ins. Co.,*      Hawaii   ,   (1984) (684 P.2d 960, 964 [Hawaii 1984]) (same). The following contrary opinions (listed in chronological order) essentially take the view that exclusion (a), in the face of another exclusion denying coverage for a loss "within" the exception to exclusion (a), creates an ambiguity justifying coverage: *Federal Ins. Co.* v. *P.A.T. Homes, Inc.,* 113 Ariz. 136, 139 (1976); *Commercial Union Assurance Cos.* v. *Gollan,* 118 N.H. 744, 748 (1978) (3-2 decision); *Aid Ins. Servs., Inc.* v. *Geiger,* 294 N.W.2d 411, 414 (N.D. 1980); *Fresard* v. *Michigan Millers Mut. Ins. Co.,* 97 Mich. App. 584, 590 (1980), aff'd [3-3], by an equally divided court, 414 Mich. 686 (1982); *Baybutt Constr. Corp.* v. *Commercial Union Ins. Co.,* 455 A.2d 914, 921-922 (Me. 1983) (4-3 decision); *McRaven* v. *F-Stop Photo Labs, Inc.,* 660 S.W.2d 459, 462 (Mo. Ct. App. 1983).

In any analysis of the scope of the coverage of an insurance policy, it may be appropriate to consider what a policyholder reasonably should expect his coverage to be in the circumstances. See R. Keeton, Insurance Law 351 (1971); Restatement (Second) of Contracts § 211 comment e (1980) ("Apart from government regulation, courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it"). Such an approach may be a better way of considering claims of policy ambiguity than a clinical study of the policy language, a process that tends to lead to a dispositive, abstract conclusion that the policy either is or is not ambiguous. Although we have not yet explicitly adopted such an approach to the interpretation of an insurance policy (*Markline Co.* v. *Travelers Ins. Co.,* 384 Mass. 139, 142 [1981]), if we were to consider the subcontractor's "reasonable expectations" in deciding this case, the subcontractor would not be benefited. There is nothing about the general nature or purpose of a comprehensive general liability insurance policy that would lead an insured reasonably to expect that the policy covered a loss of the type involved here, caused by his breach of contract and poor workman-

ship.[3] In *St. Paul Fire & Marine Ins. Co.* v. *Coss,* 80 Cal. App. 3d 888, 897 (1978), the court noted in a similar circumstance that "[w]e cannot agree that the policy and its endorsements, when properly read, could lead [the insured] to believe that he had, in effect, products liability coverage." "We are surpassing the objectively reasonable expectation of the insured when we construe this policy to provide coverage for the repair and replacement of its own faulty workmanship or product." *Baybutt Constr. Corp.* v. *Commercial Union Ins. Co.,* 455 A.2d 914, 924 (Me. 1983) (4-3 decision) (Wathen, J., dissenting).

The subcontractor objects that American should not have the benefit of exclusion (y) (2) (d) (iii) in deciding this case because American did not argue that exclusion to the trial judge or to the Appellate Division. We do not know why the trial judge ruled in American's favor because he gave no explanation for his action, and it appears that the Appellate Division identified the exclusion's significance on its own. We see no prejudice, however, to the subcontractor's presentation of its case because the Appellate Division identified the issue. The coverage claim was presented on a statement of agreed facts. The question of the application of policy exclusions was involved in the third-party action from its beginning. Certainly the Appellate Division was not obliged to consider or to rely on an argument not presented to it. See *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977). It did so, however, as it had a right to do in the circumstances, and it reached the correct result. We should sustain a lower court that on its own reaches a proper result on stated facts, even when the successful party did not argue to that court the ground on which the decision was based and even when the prevailing party is an insurance company that initially failed to present a proper view of its own policy.

---

[3] Insurers certainly did not intend that the standard form of policy providing comprehensive general liability coverage would insure contractual obligations arising from defective workmanship. See *Weedo* v. *Stone-E-Brick, Inc.,* 81 N.J. 233, 239-240 (1979). That fact, of course, is not of major significance in resolving the problems of exclusion (a) itself.

The order of the Appellate Division dismissing the report is affirmed.

*So ordered.*

ABRAMS, J. (dissenting, with whom Liacos, J., joins). The court recognizes that exclusion (a) is somewhat confusing, *ante* at 549, and the insurer concedes that "[a] fast reading of [exclusion (a)] would appear to grant coverage when work is not performed in a workmanlike manner." Even so, the court permits the insurer to escape liability. In such circumstances, I would apply the doctrine of reasonable expectations, see *Markline Co.* v. *Travelers Ins. Co.,* 384 Mass. 139, 146-147 (1981) (Liacos, J., dissenting), and permit the plaintiff to recover. There is no justification in this case for any departure from our long-standing rule that it is the insurer's responsibility to provide exclusionary clauses "free from any ambiguity and in such simple language so as to be readily understood by a person not versed in legal technicalities or nuances of phraseology." *MacArthur* v. *Massachusetts Hosp. Serv., Inc.,* 343 Mass. 670, 672 (1962). Conflicting and confusing clauses should be construed against the insurer. *Vappi & Co.* v. *Aetna Casualty & Sur. Co.,* 348 Mass. 427, 431 (1965).

The exclusion on which the insurer relies on appeal, (y) (2) (d) (iii), is found in an endorsement entitled "General Liability Multi/Cover Endorsement," which states in its first sentence that the insurance afforded by the policy "is amended to include the following *additions and extensions of coverage*" (emphasis supplied). Thereafter, contrary to the implication of the first sentence, the policy sets forth a series of exclusions including (y) (2) (d) (iii). In order to determine whether there was coverage, the plaintiff would have had to make a detailed study of the policy. I think it unconscionable to defeat reasonable expectations by inserting exclusionary language in fine print in an endorsement to a policy, particularly where the endorsement's stated and clear purpose is to extend coverage. "[I]nsurers ought not to be allowed to use qualifications and excep-

tions from coverage that are inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved. This ought not to be allowed even though the insurer's form is very explicit and unambiguous, because insurers know that ordinarily policyholders will not in fact read their policies. Policy forms are long and complicated and cannot be fully understood without detailed study; few policyholders ever read their policies as carefully as would be required for moderately detailed understanding." R. Keeton, Insurance Law 351-352 (1971). If this reasoning is applied to this case, the plaintiff should prevail.

I do not agree with the court's conclusory statement that the cases denying coverage are better reasoned. *Ante* at 549. A number of prestigious courts have reached the opposite result. See, e.g., *Federal Ins. Co.* v. *P.A.T. Homes, Inc.,* 113 Ariz. 136, 139 (1976); *Baybutt Constr. Corp.* v. *Commercial Union Ins. Co.,* 455 A.2d 914, 919-922 (Me. 1983); *Fresard* v. *Michigan Millers Mut. Ins. Co.,* 414 Mich. 686, 703-704 (1982); *McRaven* v. *F-Stop Photo Labs, Inc.,* 660 S.W.2d 459, 462 (Mo. Ct. App. 1983); *Commercial Union Assurance Cos.* v. *Gollan,* 118 N.H. 744, 745 (1978); *Aid Ins. Servs., Inc.* v. *Geiger,* 294 N.W.2d 411, 414-415 (N.D. 1980); *Applegren* v. *Milbank Mut. Ins. Co.,* 268 N.W.2d 114, 118 (N.D. 1978). See also *Olszak* v. *Peerless Ins. Co.,* 119 N.H. 686 (1979); *Storms* v. *United States Fidelity & Guar. Co.,* 118 N.H. 427, 429 (1978); *Atwood* v. *Hartford Accident & Indem. Co.,* 116 N.H. 636, 639 (1976), for cases applying the reasonable expectation doctrine to policy clauses other than those discussed in the instant case. A majority of the Supreme Judicial Court of Maine has determined in a policy containing similar clauses that, if the "language of [a] policy, construed as a whole, might reasonably be read by the ordinary intelligent insured, including ordinary business people in the construction field, as providing coverage for liability in breach of warranties of the type suffered in the instant case . . ., notwithstanding that the insurance company through its sophisticated use of a complex structural format may have intended and considered them to be excluded," then the court will not engage in "an

extensive and intricate analysis of the legal niceties of ambiguous and misleading insurance language . . . to the detriment of the ordinary member of the purchasing public." *Baybutt Constr. Corp.* v. *Commercial Union Ins. Co., supra* at 922 & n.3. The Supreme Court of New Hampshire also has concluded that the relationship between exclusion (a) and (o) (in our case [y] [2] [d] [iii]) should be determined by "whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain exclusions qualified the policy's grant of coverage." *Commercial Union Assurance Cos.* v. *Gollan, supra.*

Where, as here, the insurer concedes that "[a] fast reading" would appear to grant coverage, the policy should "be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters. . . . An important corollary of the expectations principle is that insurers ought not to be allowed to use qualifications and exceptions from coverage that are inconsistent with the reasonable expectations of a policyholder having an ordinary degree of familiarity with the type of coverage involved." R. Keeton, Insurance Law 351 (1971). I think it unconscionable to permit "[t]he use of fine-print clauses negating the reasonable expectations of the non-drafting party." 15 S. Williston, Contracts § 1763A, at 215 (3d ed. 1972). I dissent.