JOHN J. DONOVAN, trustee,[1] *vs.* COMMERCIAL UNION
INSURANCE COMPANY.

No. 96-P-1443.

Barnstable. February 9, 1998. - April 15, 1998.

Present: WARNER, C.J., KAPLAN, & SPINA, JJ.

*Insurance,* Comprehensive liability insurance, Contractor's insurance, Cover-
age. *Indemnity. Contract,* Insurance. *Judgment,* Preclusive effect.

In an action seeking a declaration of coverage under a comprehensive general
liability insurance policy, the judge correctly concluded that a faulty
workmanship exclusion in the policy absolved the defendant insurer of li-
ability for costs arising from the replacement of property made necessary
by the faulty workmanship of a subcontractor of the insured general
contractor. [599-600]

Discussion of State cases concerning the liability of an insurer for damages
arising from defective work performed by an insured, where the insurance
policy in question contains a faulty workmanship exclusion. [600-602]

CIVIL ACTION commenced in the Superior Court Department on
October 29, 1992.

The case was heard by *Richard F. Connon,* J.

*Kevin M. Orme* for the plaintiff.

*Richard R. Eurich (Carol A. Griffin* with him) for the
defendant.

KAPLAN, J. We affirm the decision of a Superior Court judge
that on the present facts a "faulty workmanship" exclusion in a
comprehensive general liability (CGL) policy with broad form
CGL endorsement absolved the insurer of liability for the cost
of replacement of property made necessary by faulty workman-
ship of a subcontractor on behalf of the insured general contrac-
tor. The decision will be elucidated by a narrative of the litiga-
tion that led to it.

Donovan Trust ("Donovan") owned an unimproved lot at

---

[1]John J. Donovan is trustee of Donovan Trust.

32B Shaker House Road in Sandwich. In April, 1987, Donovan, by John J. Donovan, trustee, entered into a contract with Ocean Sunset Real Estate and Construction, Inc. (Ocean Sunset), by John J. Donovan, president (he was also treasurer and sole director of the company). Under the terms of the contract, Ocean Sunset undertook to build a single-family home on the Shaker House lot. This would require as a first step building a timber retaining wall. Ocean Sunset subcontracted the construction of the retaining wall to an individual doing business as RDI Landscaping and Construction (RDI). At a time, about December, 1987, when the wall and the foundation of the house were in place but the house was still in course of construction, the wall was found to be defective through bulging and buckling. Donovan saw to the dismantling and replacement of the wall in the latter part of 1988 at an alleged cost to it of $52,000. Donovan applied to RDI's liability insurer for reimbursement but the carrier denied coverage under its policy. So also the builder's risk carrier for Ocean Sunset denied coverage. Donovan took no action against either of these insureds or against their respective insurance companies. Rather, Donovan asserted a claim against Commercial Union Insurance Company (Commercial Union), the defendant herein, which had issued a CGL policy with broad form CGL endorsement to Ocean Sunset. Commercial Union after inquiry denied liability for the property damage that had occurred.

1. In late December, 1988, Donovan by its trustee commenced an action in Superior Court naming Ocean Sunset and Commercial Union as defendants. Donovan sought, first, a declaration of liability on the part of Commercial Union on the apparent theory that Commercial Union was bound under the policy and endorsement to indemnify Ocean Sunset for the damages allegedly owing by Sunset to Donovan for the replacement of the retaining wall. Second, Donovan sought damages under the Consumer Protection Act, G. L. c. 93A, §§ 2(a) & 9, see G. L. c. 176D, § 3(9)(f), for Commercial Union's refusal of Donovan's claim against it when its liability therefor was "reasonably clear." G. L. c. 176D, § 3(9)(f), as inserted by St. 1972, c. 543, § 6.

Ocean Sunset was not served with process in the action and it appears that Donovan's complaint against Ocean Sunset was dismissed without prejudice.

Upon cross motions of the parties for summary judgment, the

judge pointed out, first, with respect to the request for a declaration on the claim for indemnity, that there was a question of standing, for an anomaly was presented — "this action," said the judge, "is between an injured party and the alleged tortfeasor's insurer [when] [t]he tortfeasor has been dismissed and negligence has not been proven in an independent action . . . . The mere existence of that right to maintain an action [against Ocean Sunset or RDI] does not entitle the injured party to proceed directly against the tortfeasor's insurer." In the circumstances — the plaintiff without standing and the alleged tortfeasor absent from the action — any declaration as to putative liability (coverage) should be declined.

Second, with respect to the consumer protection claim, the judge went directly to the ultimate question of coverage under an insurance policy of this kind for this type of casualty. He held that Commercial Union "was warranted in concluding that liability was not reasonably clear" because of the probable applicability of a "faulty workmanship" exclusion — exclusion (A)(2)(d)(iii) in section VI of the broad form endorsement, as interpreted in decisions of the Supreme Judicial Court and this court. (We consider below the scope of the exclusion and the effect of decided cases.)

Accordingly, judgment entered on September 21, 1990, dismissing the complaint without prejudice so far as it sought a declaration, and dismissing the complaint on the merits so far as it sought relief under the consumer protection statute.

Donovan appealed to this court, which affirmed (33 Mass. App. Ct. 1105 [1992]). A panel of the court, addressing the c. 93A question, agreed with the judge of the Superior Court that Commercial Union was not in violation of the statute because the insurer's liability under the policy was "not reasonably clear." Indeed, the court said in its unpublished memorandum that the basic damage claim for replacement of the wall "does not appear to be covered by the terms of the policy and endorsement issued by Commercial Union to Ocean Sunset," citing exclusion (A)(2)(d)(iii) of the endorsement (and also referring to exclusion [m] of the basic policy).[2]

2. Pending the appeal to this court just described, Donovan brought a fresh action against Ocean Sunset for "contractual indemnification," charging it with RDI's allegedly negligent

---

[2]As to (m), see note 6 below.

work. Ocean Sunset, evidently served with process, did not answer the complaint and was defaulted, and judgment entered on December 14, 1990, for Donovan against Ocean Sunset for $52,000. We may fairly say of this action, seemingly intended to improve Donovan's "standing," that it is a little marred by the circumstance that John J. Donovan sat on both sides of the action.[3]

3. Thus we come to the present action, the subject of the present appeal. Donovan in October, 1992, commenced a fresh action in Superior Court against Commercial Union as sole defendant and (with whatever help as to standing Donovan might assert by means of the default judgment) sought anew a declaration of coverage in Donovan's favor under the insurance policy issued to Ocean Sunset. Commercial Union answered the complaint, the parties submitted a joint statement, there was a brief trial, and, at the close of the plaintiff's case, a request for judgment. The judge filed a memorandum and order followed by entry of judgment on December 21, 1995, in favor of Commercial Union. The details of the record need not detain us. In essence, the judge thought, on the question of coverage, that Commercial Union was entitled to the benefit of "issue preclusion" deriving from the decision in its favor in the first action and the affirmance by this court. The judge also expressed his own view that coverage failed under exclusion (A)(2)(d)(iii).

We agree with Donovan's contention that issue preclusion is not in sight. The first action decided only that Commercial Union was warranted in believing that liability on its part was not reasonably clear, so it was justified in its response to the c. 93A demand and had complied with the statute. It was only in this sense and context that the courts discussed the terms of the insurance and intimated that liability probably was excluded. Such a dictum-like discussion of coverage did not rise to the level of a firm decision that could preclude an issue of fact or law. See Restatement (Second) of Judgments § 27 (Issue Preclusion — General Rule) and comment d (1982).

We revert, then, to the merits of the coverage question. In our view exclusion (A)(2)(d)(iii) does control. Section (A)(2) states

---

[3]The plaintiff trustee has moved in this court to substitute Ocean Sunset for himself as plaintiff-appellant. We deny this attempted shuffle at the last moment and especially as it stems from a self-created default judgment. In the end, the merits of this action depend on the interpretation of the insurance provisions and the proposed change of party designation is unimportant.

that the property damage liability provided by the policy does not apply

"to that particular part of any property . . .

"(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured."

To read this text upon the facts of the present case — insurance for property damage is excluded as to property (retaining wall) the replacement of which was necessary by reason of faulty workmanship (by subcontractor RDI) on behalf of the insured general contractor (Ocean Sunset).

The exclusion reads with particular clarity on the present facts because the faulty workmanship damaged directly the very property which had to be replaced. And considering the general nature of the exclusion, we may say that the risks described by it are foreign to what business people would normally and reasonably associate with a policy of this liability — CGL — type; rather, they would think of finding such risks covered in a business risk or products liability policy (or a performance bond).

The cases cited by the judges in the first lawsuit, each involving an exclusion identical with that set out above, do but strengthen our reading of the text.

*Bond Bros.* v. *Robinson*, 393 Mass. 546 (1984) (5-2 decision): A subcontractor (defendant) was negligent in installing reinforcing steel and welded wire mesh (rebar work), and this caused instability of a concrete foundation poured by the general contractor (plaintiff). The general contractor was put to loss in doing necessary remedial work. The court held that the CGL policy issued to the subcontractor by the insurer (third-party defendant) did not provide indemnity in favor of the general contractor — the claimed coverage was denied by the exclusion (y)(2)(d)(iii). There was no ambiguity about this exclusion. *Id.* at 547-548. The subcontractor attempted, in vain, to import an ambiguity via an exception to an exclusion (a) in the policy.[4] The court said, "There is nothing about the general nature or

---

[4]In that respect, the court said, "We flatly reject the concept that, because exclusion (a) excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an objectively reasonable

purpose of a comprehensive general liability insurance policy that would lead an insured reasonably to expect that the policy covered a loss of the type involved here, caused by his breach of contract and poor workmanship." *Id.* at 551-552.

*Lusalon, Inc.* v. *Hartford Acc. & Indemnity Co.*, 400 Mass. 767 (1987): Lusalon, a masonry subcontractor in the construction of a Boston high school, accidentally spattered mortar on adjacent window frames while installing a concrete block. Instructed by the general contractor to clean the frames, Lusalon in doing so failed to remove the muriatic acid from the cleaning fluid; and when the painting subcontractor painted the frames, the paint peeled. The general contractor repaired the frames at a cost, and the question in Lusalon's declaratory action was whether Hartford, Lusalon's insurer, was bound to defend and indemnify Lusalon in respect to the general contractor's claim for the repair expense. (Lusalon and the general contractor entered into a settlement agreement after the insurer's disclaimer of responsibility.) *Id.* at 768-770. The court held, at 770-771, that exclusion (y)(2)(d)(iii) applied, rejecting Lusalon's contention that "that particular part of any property" referred exclusively to Lusalon's work product and did not extend to the surfaces of the frames. The exclusion was held not to be so confined. "Our holding in *Bond Bros.* controls the outcome in this case."[5] *Id.* at 771.

*Frankel* v. *J. Watson Co.*, 21 Mass. App. Ct. 43 (1985): In this third-party action, the trial judge reported questions of law about coverage in a situation where a house owner (plaintiff) hired the insured company (defendant) to move his farmhouse and install it upon a foundation to be newly built. The insured botched the construction of the foundation, and the house, when installed, sagged. *Id.* at 44. Our court read exclusion (y)(2)(d)(iii) as excluding coverage by the insurer (third-party defendant) for any fault in the foundation — the very property worked on — but as not excluding coverage for the damage to the house. *Id.* at 45-46. The case was decided after *Bond Bros.* but before

expectation of coverage, when it is confronted with another explicit exclusion." *Id.* at 549.

On the relation between (a) and other exclusions, see the cases assembled in *Dodson* v. *St. Paul Ins. Co.*, 812 P.2d 372, 374-375 (Okla. 1991).

[5]The court, however, noted that Lusalon had not disputed a master's finding that it was Lusalon's responsibility to remove the waste splatterings from the frames.

*Lusalon*, which was more instructive than *Bond Bros.* on the reach of the exclusion to collateral property damage. For purposes of the present case, however, one can accept a narrow interpretation of the exclusion and still conclude that it denied coverage to the property damage done to the retaining wall, whose installation was part of the very work the insured undertook to do.[6]

Donovan offers no plausible reason for denying that exclusion (A)(2)(d)(iii) applies by its terms to the facts at bar. Instead, it contends that the only exclusion that may be considered is (A)(3) of section VI, which provides that the liability coverage of the policy for property damage does not extend to the "completed operations hazard," as defined, and that, because that exclusion *omits* the phrase "or on behalf of" the insured, a claim against the insured, based on faulty workmanship of the subcontractor, *is* covered. No plausible reason is given why exclusion (A)(2)(d)(iii) should be disregarded and (A)(3) should become exclusively relevant. Exclusion (A)(3) speaks to particular risks arising after completion of a construction project, whereas here we have a quite different situation of attempted part performance — the building of the initial retaining wall. As the briefs show, it is a disputed question, which we need not approach, whether the completed-operations-hazard exclusion (with the phrase "or on behalf of" omitted) extends to cases where the fault is the subcontractor's. The notion, however, that if the exclusion is read so as not to extend to such cases, insurance coverage affirmatively and automatically follows, is not self-proving and would seem to be in the teeth of "the basic principle that exclusion clauses *subtract* from coverage rather than grant it." *Weedo* v. *Stone-E-Brick, Inc.*, 81 N.J. 233, 247 (1979) (emphasis in original), quoted in *Bond Bros.*, 393 Mass. at 550.

*Judgment affirmed.*

---

[6]As noted, in the first lawsuit our court mentioned an exclusion (m) of the main policy. The suggestion is that the collapse of the retaining wall may be considered a deprival of the "use" of the wall and so within the (m) exclusion. We need not enter into ramifications of this proposition. We also pass over the insurer's argument based on an exclusion (n).