NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-247                                    Appeals Court

ALL AMERICA INSURANCE COMPANY  vs.  LAMPASONA CONCRETE CORPORATION & others.[1]


No. 18-P-247.

Essex.     December 5, 2018. - March 19, 2019.

Present:  Rubin, Milkey, & McDonough, JJ.


Insurance, Insurer's obligation to defend, Comprehensive liability insurance, Contractor's insurance, Coverage. Contract, Insurance, Indemnity.  Indemnity.



Civil action commenced in the Superior Court Department on October 9, 2015.

The case was heard by Timothy Q. Feeley, J., on a motion for summary judgment.


Doreen M. Zankowski for Northeast Hospital Corporation.
Michael F. Aylward for the plaintiff.


MILKEY, J.  This case arises out of the construction of

Beverly Hospital (hospital), which is owned by Northeast

---

[1] Northeast Hospital Corporation, Dacon Corporation, and H.G. Moore Associates, Inc.

Hospital Corporation (NHC). Following construction of the hospital, NHC filed a complaint in Superior Court against the general contractor, Dacon Corporation (Dacon), alleging property damage to the finished first floor and other areas of the hospital. In that action, Dacon filed a third-party complaint seeking indemnification from various subcontractors, including Lampasona Concrete Corporation (Lampasona), for improper installation of the concrete slab that lies underneath the finished first floor.

In a separate action that resulted in this appeal, Lampasona's insurer, All America Insurance Company (All America), filed a complaint against the defendants seeking a judgment declaring that it has no duty to defend or indemnify Lampasona under the comprehensive general liability (CGL) policy that Lampasona had purchased. On review of All America's motion for summary judgment, a Superior Court judge concluded that Lampasona's work on the concrete slab was inseparable from work that other subcontractors performed on other layers of the flooring system. On that basis, the judge determined that an exclusion to the CGL policy applied, and he allowed summary judgment in All America's favor. For the reasons that follow, we vacate the judgment and remand for further proceedings.

Standard of review. We review the allowance of a motion for summary judgment de novo without deference to the motion

judge's reasoning. See Miller v. Cotter, 448 Mass. 671, 676 (2007). In our review, we construe all facts "in the light most favorable to the nonmoving party." Drakopoulos v. United States Bank Nat'l Ass'n, 465 Mass. 775, 777 (2013).

Background. 1. Nature of dispute. The first floor of the hospital has at least three layers: a bottom vapor barrier, the concrete slab, and a top layer of either tile or carpet. While Lampasona installed the concrete slab, different subcontractors installed the other two layers. In the action that NHC brought against Dacon, NHC alleges that Lampasona made multiple errors in installing the concrete slab. These errors included puncturing the vapor barrier, which allowed moisture to pass through into the concrete slab, and improperly mixing fiber reinforcement into the concrete, which contributed to moisture wicking to the surface. The resulting moisture problems caused damage to the tiles and carpet, such as causing the tiles to buckle.

NHC already has repaired many areas of the floor. This process required NHC to remove the existing tiles and carpet, burn off fiber from the top of the concrete, and roll on a moisture mitigation system. Despite the summary judgment context of the declaratory judgment action, the judge assumed that the entire flooring system, including the vapor barrier

upwards, must be replaced.[2]  There is no basis in the record for this "finding," and, in any event, all facts should have been construed in the light most favorable to NHC.

2.  <u>All America insurance policy</u>.  Under the CGL policy issued to Lampasona, All America agreed to pay all "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  In order for the insurance to apply to property damage, the damage has to be caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The CGL policy also contains three exclusions that are relevant to the parties' arguments on appeal.  The exclusion under § j(6) states that the insurance does not apply to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  However, this exclusion does not apply to damage "occurring away from premises you own or rent and arising out of . . . 'your work'" if the work has been completed or abandoned.

---

[2] NHC raised this error in a motion for reconsideration.  In denying the motion for reconsideration, the judge noted that whether the vapor barrier needed to be replaced did not alter his analysis.

The CGL policy also contains two additional exclusions. The exclusion under § l of the policy does not cover damage to "'your work' arising out of it or any part of it."  The other exclusion, under § m, does not cover damage to "impaired property."  "Impaired property" is defined, in relevant part, as property other than Lampasona's work that can be restored by "[t]he repair, replacement, adjustment or removal of" Lampasona's work.

3.  Summary judgment.  Following a hearing in the declaratory judgment action, a Superior Court judge granted summary judgment in All America's favor based on the application of the § j(6) exclusion.  Citing to Bond Bros., Inc. v. Robinson, 393 Mass. 546 (1984), the judge explained that the "key" to his ruling was his determination that Lampasona's work played an "integral and inseparable part . . . in the installation of a flooring system that was comprised of multiple layers, but constituted one completed product:  interior flooring for the first floor of [the hospital]."  The judge also stated that while installing the concrete slab, "Lampasona's work was incorrectly, even if inadvertently, performed on the vapor barrier."  The judge concluded that § j(6) of the policy excluded coverage for any damage that resulted from the pierced vapor barrier.

Discussion. 1. Section j(6) exclusion. We begin by addressing § j(6), the sole ground relied on by the judge in granting summary judgment. That exclusion exempts from coverage an insured contractor's faulty workmanship, but only with respect to "that particular part of the property subject to the faulty workmanship." Frankel v. J. Watson Co., 21 Mass. App Ct. 43, 46 (1985). A review of the facts in Frankel shows why that exclusion does not apply here. In Frankel, homeowners alleged that their farmhouse began to sag due to the negligent construction of the foundation. Id. at 44. Because the contractor's work product was limited to the foundation and did not extend to the farmhouse, the contractor's general liability policy covered damage to the farmhouse. Id. at 46. Frankel is thus a fairly straightforward application of the general rule that "although a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes . . . property damage to something other than the insured's work product." S. Plitt, D. Maldonado, J.D. Rogers, & J.R. Plitt, Couch on Insurance 3d § 129:4 (rev. ed. 2015).

In the case before us, it is undisputed that Lampasona did not install the vapor barrier on which the concrete slab sits, or the floor tiles or carpeting installed on top of the concrete

slab. The alleged damage that Lampasona caused to those parts of the hospital property (e.g., the piercing of the vapor barrier and the buckling of the floor tiles) does not fall within the § j(6) exclusion. See Frankel, 21 Mass. App. Ct. at 46.[3]

Bond Bros., Inc. v. Robinson, 393 Mass. 546 (1984), the principal case on which the judge relied, is not to the contrary.[4] There, a subcontractor was hired to install rebar in connection with the construction of a concrete wall, but failed to perform the rebar work for a portion of the wall. Id. at 547. The missing rebar meant that "the wall did not meet design criteria, was structurally unstable, and required remedial work." Id. In other words, the faulty workmanship at issue in Bond Bros. (the missing rebar) did not cause, but itself was, the damage. That is different from what happened here, where

---

[3] All America argues that Bond Bros., discussed in detail below, calls into question the continued viability of Frankel. We previously have rejected such a claim. See Lusalon, Inc. v. Hartford Acc. & Indem. Co., 23 Mass. App. Ct. 903, 904-905 (1986), S.C., 400 Mass. 767 (1987) (recognizing that both Bond Bros. and Frankel stand for same proposition: "the liability of [an] insurer [does] not extend to parts of the property that the insured [has] worked on").

[4] All America also relies on cases involving general contractors. See, e.g., Donovan v. Commercial Union Ins. Co., 44 Mass. App. Ct. 596 (1998). Those cases are inapposite, as a general contractor's work product includes the entire project, whereas subcontractors work on discreet components of a project.

Lampasona's work on the concrete slab caused damage to other parts of the hospital that were not part of its work.

None of this is to say that the judge necessarily was wrong in concluding that the vapor barrier, concrete slab, and floor tiles or carpeting fairly could be characterized as layers of an integrated flooring system.  However, that fact by itself is beside the point for purposes of determining whether the § j(6) exclusion applies.  Where Lampasona was hired to install one layer of the flooring system but caused discrete damage to the other layers, that damage falls outside the § j(6) exclusion. Cf. Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 410 (1st Cir. 2009) (concluding, in reliance on Frankel, that carpet installer enjoyed coverage under its CGL policy with regard to damage it may have caused to concrete subfloor on which carpeting was installed, notwithstanding exclusion for property damage to carpet installer's product).[5]

We further note that the § j(6) exclusion, by its express terms, does not apply to damage that occurred after Lampasona completed its work.  Construing the facts in the light most

---

[5] To the extent the judge was suggesting that Lampasona's actions necessarily brought the vapor barrier within Lampasona's scope of work, we discern no merit in that suggestion.  See Essex Ins. Co., 562 F.3d at 410 (rejecting argument that concrete subfloor on which carpeting was installed became carpet installer's work product).

favorable to the nonmoving party, NHC has alleged that some of the damage occurred after the construction of the hospital. Such damage would not fall within the scope of the § j(6) exclusion in any event.

2. <u>Alternative grounds</u>.  We now turn to whether the grant of summary judgment can be sustained on alternative grounds. All America argued in the trial court, as it does on appeal, that there was no separate "occurrence" here that could trigger coverage.[6]  Rather, according to All America, a claim against Lampasona simply would be one for faulty workmanship, which would not be covered.  To support this argument, All America relies on cases such as <u>Bond Bros</u>.  All America's contention that there was no "occurrence" fails for the same reasons discussed above with respect to the § j(6) exclusion.  The claim here is not simply that Lampasona's work was substandard and needs to be replaced, but that this work caused damage to particular parts of the hospital property outside of its own work.  The puncturing of the vapor barrier and the migration of water through the concrete slab causing damage to the layer above it fit readily within the definition of an occurrence. See <u>Trustees of Tufts Univ</u>. v. <u>Commercial Union Ins. Co</u>., 415

---

[6] "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Mass 844, 848 (1993) (applying term "occurrence" to exposure to contaminants).

All America also argues that two alternative exclusions apply: those under § l and § m. However, the exclusion under § l by its clear terms applies only to damage to Lampasona's own work, and the alleged property damage here was to other subcontractors' work. Cf. Essex Ins. Co., 562 F. 3d at 409-410 (discussing analogous exclusion for damage to insured's product). All America's reliance on the § m exclusion is similarly unavailing, as the record does not support a conclusion that any damaged property can be restored to use merely through the repair, replacement, adjustment, or removal of Lampasona's work.[7]

Conclusion. For all of the above reasons, we conclude that the judge erred in ruling, as a matter of law, that All America faced no duty to defend or indemnify Lampasona for the claims

---

[7] One additional point bears comment. The judge questioned NHC's standing. Given that NHC was brought to this litigation as a defendant, we are not clear why the judge felt that its standing was implicated. In any event, because NHC's ability to recover under Lampasona's policy depends on the resolution of the coverage issues that All America raised (at least insofar as they implicate All America's duty to indemnify), it is plain that NHC has "a definite interest in the matters in contention" sufficient to confer standing. Bonan v. Boston, 398 Mass. 315, 320 (1986).

that NCH has brought.[8]  We therefore vacate the judgment and remand for additional proceedings consistent with this opinion.

<u>So ordered</u>.

---

[8] At oral argument, All America urged us -- in the event we reversed -- to offer detailed views on the particular species of potential damages here for which it could be liable.  Especially given the underdeveloped state of the factual record, it would be inappropriate to offer such musings.