Claimant's request for attorney's fees will remain under consideration.

### ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that plaintiff's request for forfeiture is denied.

IT IS HEREBY FURTHER ORDERED that plaintiff deliver the defendant money to the claimant, John J. Vitale.

IT IS HEREBY FURTHER ORDERED that the costs of this action are taxed against the plaintiff. 28 U.S.C. § 2412.

IT IS HEREBY FURTHER ORDERED that the bond posted by claimant in the amount of $355.00 be returned to claimant.

IT IS HEREBY FURTHER ORDERED that claimant's request for attorney's fees remains under consideration. On or before April 8, 1988, claimant shall file an itemized statement of attorney's fees for services rendered and a brief in support of his request for attorney's fees. Plaintiff is directed to respond to claimant's request for attorney's fees on or before April 18, 1988.

**UNITED FIRE AND CASUALTY COMPANY, Plaintiff,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, Defendant.**

**No. 87–0521–CV–W.**

United States District Court, W.D. Missouri, W.D.

May 13, 1988.

Gardiner B. Davis, David A. Sosinski, David V. Kenner, Spencer, Fane, Britt & Browne, Kansas City, Mo., for plaintiff.

John L. Hayob, Michael D. Matteuzzi, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

United Fire and Casualty Company (UFCC) has filed the above-styled action seeking a declaratory judgment against New Hampshire Insurance Company (NHIC). UFCC's complaint seeks a declaration that NHIC's insurance policy provided liability coverage for the personal injuries resulting from an automobile accident involving an auto owned by NHIC's insured, Royal Chevrolet, but operated at the time of the accident by an employee of UFCC's insured, J & K Clean–Up Company (J & K). In addition, UFCC is seeking indemnification from NHIC for the cost of defending two suits filed as the result of the above-noted accident and the cost of the settlements of those two suits.

The parties have filed cross-motions for summary judgment along with a joint stipulation of facts. The stipulation of the parties is attached hereto as Appendix A and incorporated by this reference as our findings of fact.

The parties have also filed suggestions in support of their respective motions for summary judgment. For the reasons we now state, we find and conclude that summary judgment in favor of defendant NHIC should be granted.

## I

### A.

NHIC contends that the "activity in question—the delivery by an employee of J & K Clean–Up of an automobile owned by Royal Chevrolet following the 'detailing' of that vehicle at J & K's facility … is expressly excluded by the plain wording of IV.D.1.b(2) of the NHIC insurance policy." Defendant's Brief at 1. We agree.

This Court's construction of the policy at issue is governed by the general rules relating to the construction of insurance policies in Missouri. Under Missouri law plain and unambiguous language must be given its plain meaning. *See, e.g., Jordan v. United Equitable Life Insurance*, 486 S.W.2d 664, 666–67 (Mo.App.1972). Missouri law also provides:

> Exceptions to liability are to be construed to give the insured the protection which he reasonably has a right to expect. * * * These general rules do not, however, authorize a perversion of language or the exercise by the court of inventive powers for the purpose of creating an ambiguity. Our function is to give force and effect to the contract as it is written, * * * and the contract should receive reasonable interpretations in order to accomplish the intention of the parties.

*Id.; see also McRaven v. F–Stop Photo Labs, Inc.*, 660 S.W.2d 459, 461–62 (Mo. App.1983).

The specific exclusionary clause which NHIC relies provides in pertinent part:

> b. Anyone else is an insured while using with your permission a covered auto except:
>
> .     .     .     .     .
>
> (2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is your garage operations.

IV.D.1.b(2). We find and conclude that this exclusionary clause unequivocally excludes coverage under the circumstances of this case.

The stipulated facts establish that at the time of the above-noted automobile accident, J & K Clean–Up was in the business of performing detail work on automobiles, *i.e.*, interior and exterior washing and polishing on motor vehicles. Stip. ¶ 2. At the request of Royal Chevrolet, J & K periodically performed detail work on used cars owned by Royal Chevrolet. Stip. ¶ 4. As part of J & K's service agreement with Royal Chevrolet, J & K's employees were responsible for picking up automobiles which needed detail work at Royal Chevrolet's Harrisonville, Missouri dealership and returning the automobiles to Royal's dealership upon completion of the detailing work at J & K's Kansas City, Missouri shop. *Id.* J & K performed such pick up and delivery service each time it performed detailing work on Royal Chevrolet's automobiles. *Id.*

The stipulation of facts further establishes that an employee of J & K, after completion of a detailing job at the J & K shop, was returning an automobile owned by Royal Chevrolet to its Harrisonville dealership when the car struck the rear of a vehicle. Stip. ¶ 5.

In light of the above-stipulated facts, we find and conclude that Section IV.D.1.b.(2) unequivocally excludes coverage of the automobile in question. For the J & K employee who was delivering Royal Chevrolet's automobile at the time of the accident was clearly performing a service in furtherance of J & K's "business" of "servicing" automobiles.

### B.

Plaintiff contends, however, that when J & K's employee was returning Royal Chevrolet's vehicle after completion of the detailing work, he was engaged in *Royal Chevrolet's* "garage operations" within the meaning of the NHIC policy.[1] (Emphasis added). Plaintiff therefore contends that the exclusion embodied in Section IV.D.1.b(2) is not applicable. Plaintiff's Brief at 5. Plaintiff's contention is untenable.

The facts of this case, specifically those set forth in part A of our opinion, establish that, contrary to plaintiff's contention, J & K's delivery of Royal Chevrolet's automobiles to Royal's Harrisonville dealership was an activity necessary and incidental to J & K's detailing business. *See Weston v. Great Central Insurance Company*, 514 S.W.2d 17, 22–24. (Mo.App.1974). ("Both by custom and agreement, the delivery of the car, following repairs and service was necessary and incidental to the operations of the station"). Applying the clear and unambiguous language of Section IV.D.1.b(2), we find and conclude that NHIC's policy does not extend coverage to the activity resulting in the car accident at issue.

Our construction and application of Section IV.D.1.b(2) to the circumstances underlying this case is consistent with the decisions by Missouri and other State courts which involved automobile policies excluding coverage of an automobile while being used by any person engaged in the business of repairing or servicing motor vehicles. *See, e.g., Weston v. Great Central Insurance Company*, 514 S.W.2d 17 (Mo. App.1974); *Humble Oil & Refining Company v. Lumberman's Mutual Casualty Co.*, 490 S.W.2d 640 (Tex.Civ.App.1973); 6C J. Appleman, Insurance Law and Practice § 4372 (1979 & Supp.1987). Those courts have uniformly applied the above-noted exclusion to accidents occurring while an automobile is being picked up or delivered by an automobile dealer or service station for purposes of repair or service.[2] *E.g.,*

---

1. Plaintiff relies on the last clause of § IV.D.1.b.(2) which provides that the exclusion set forth in b(2) is not applicable if the business of the permissive user of the auto is "your [Royal Chevrolet's] garage operations."

Garage operations are defined as "all operations necessary or incidental to a garage business." NHIC's Policy § I.F.

2. Plaintiff cites *Dumas v. Hartford Accident and Indemnity Company*, 181 So.2d 841 (La.App. 1965), as authority for its contention that delivery is not an essential part of the services provided by a service station. Defendant, however, accurately points out that the *Dumas* decision "has been criticized by a number of courts" and that "most of the court's opinion in *Weston v.*

*Weston,* 514 S.W.2d at 24. *Humble,* 490 S.W.2d at 642. For those courts have found that such services are an integral and necessary part of the service station business. *Weston,* 514 S.W.2d at 24.

In so holding, the above-noted courts have emphasized that their application of the standard exclusion noted above to delivery of an automobile back to the bailor is consistent "with the rule in most states ... that the responsibility for the operation of a car in the course of its repair, extending to delivery, falls upon the bailee." *Id.* at 22.[3]

In summary, we find that J & K's delivery of Royal's automobiles to Royal's Harrisonville dealership constitutes an integral and necessary part of J & K's detailing business. We therefore find and conclude that Section IV.D.1.b(2) of NHIC's policy unequivocally excludes coverage under the circumstances of this case.

Accordingly, it is

ORDERED (1) that plaintiff UFCC's motion for summary judgment should be and the same is hereby denied. It is further

ORDERED (2) that defendant NHIC's motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (3) that the Clerk of the Court shall enter final judgment in favor of defendant and against plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

## APPENDIX A

### STIPULATION OF FACTS

COME NOW plaintiff United Fire & Casualty Company (hereinafter "UFCC") and defendant New Hampshire Insurance Company (hereinafter "NHIC"), by and through their undersigned attorneys, and stipulate and agree as follows:

1. Royal Ventures, Inc. d/b/a Royal Chevrolet–Oldsmobile (hereinafter "Royal Chevrolet") is an automobile dealership located in Harrisonville, Cass County, Missouri.

2. Joe Jackson, d/b/a J & K Clean-up (hereinafter "J & K Clean–Up"), in December, 1985, owned and operated a business in Kansas City, Jackson County, Missouri, which performed "detail work" on automobiles. Detail work involved washing, polishing, cleaning the interior and cleaning the motor of a vehicle.

3. In December, 1985, Robert J. Wheeler was employed by J & K Clean–Up. Robert Wheeler's job duties included performing "detail work" and picking up and delivering cars before and after the "detail work" had been performed.

4. At the request of Royal Chevrolet, J & K Clean–Up periodically performed detail work on used cars owned by Royal Chevrolet. When Royal Chevrolet wanted a used car detailed, an employee of Royal Chevrolet would call an employee of J & K Clean–Up and inform such employee that Royal Chevrolet had a car that needed "detail work." An employee of J & K Clean–Up would then drive to Royal Chevrolet, pick up the car and return it to J & K Clean–Up where the car would be detailed. After detailing, an employee of J & K Clean–Up would return the vehicle to Royal Chevrolet. J & K Clean–Up was paid $60.00 per car for this service.

5. On December 2, 1985, Robert Wheeler was involved in an accident while working for J & K Clean–Up as he was returning a 1978 Chevrolet Caprice, which was owned by Royal Chevrolet, from J & K Clean–Up's facility in Kansas City, Missouri to Royal Chevrolet in Harrisonville, Missouri. More specifically, the accident occurred when Robert Wheeler negligently allowed the vehicle he was driving to strike

---

*Great Central Insurance Co.,* 514 S.W.2d 17 (Mo. App.1974), [cites] ... authority which rejects the *Dumas* decision." Reply Brief at 4. We therefore find plaintiff's reliance on *Dumas* untenable.

**3.** Although plaintiff cites a plethora of cases in its suggestions in support, these cases are not directly on point and fail to support its contention that the detailing activities of J & K, including delivery, constitute the garage operations of Royal Chevrolet within the meaning of NHIC's policy.

the rear of a vehicle in which Linda Kelsay and Anne Grasher were passengers.

6. As a result of this accident, two lawsuits were filed, *Grasher v. Wheeler*, No. CV186–160CC, and *Kelsay v. Wheeler*, No. CV186–161CC, in the Circuit Court of Cass County, Missouri. Both lawsuits named Robert Wheeler, J & K Clean–Up and Royal Chevrolet as defendants, however, prior to disposition, Royal Chevrolet was dismissed by plaintiffs from both lawsuits. Prior to trial, both suits were settled for a total of $11,000.00. UFCC paid $7,102.03 in its defense of the two lawsuits.

7. At the time of the accident, UFCC provided liability insurance coverage to J & K Clean–Up pursuant to policy number GP 60–013 894. A true copy of this policy is attached hereto and incorporated herein by reference as Exhibit 1 [deleted for publication purposes].

8. At the time of the accident, NHIC provided liability insurance coverage to Royal Chevrolet pursuant to policy number GP 899–17–40. A true copy of this policy is attached hereto and incorporated herein by reference as Exhibit 2 [redacted for purposes of publication].

9. UFCC has demanded that NHIC indemnify it for the amount paid in settlement ($11,000) and in defense of the case ($7,102.03). NHIC, however, has refused to indemnify UFCC and continues to refuse to do so.

EXHIBIT 2

# GARAGE
# POLICY

A Policy of
Insurance from
The New Hampshire Insurance Group.

This policy contains deductible clauses. Coverage is provided by the company named upon part B, a stock insurance company (herein called the Company.) This policy is not valid or complete unless a Declarations-Part B, countersigned by an authorized representative of the Company, and a Part C are included herewith.

Home Office: Manchester, New Hampshire.

Granite State
Insurance Company
Manchester,
New Hampshire

New Hampshire
Insurance Company
Manchester,
New Hampshire

CA 00 05 (Ed. 01 8'
BJP 8058-O-B (2 CO.) (Ed. 2

**YOUR GARAGE POLICY—QUICK REFERENCE**

| | Beginning On Page | | | | Beginning On Page |
|---|---|---|---|---|---|
| DECLARATIONS AND SUPPLEMENTARY SCHEDULES— Garage Policy | | | **PART VI—PHYSICAL DAMAGE INSURANCE (Cont'd.)** | | 4 |
| | | | D. | We Will Also Not Cover—Additional Exclusions (Applicable to Dealers) | |
| PART I—WORDS AND PHRASES WITH SPECIAL MEANING | 1 | | E. | How We Will Pay—The Most We Will Pay | |
| PART II—WHICH AUTOS ARE COVERED AUTOS | 1 | | F. | Glass Breakage—Hitting A Bird Or Animal— Falling Objects Or Missiles | |
| PART III—WHERE AND WHEN THIS POLICY COVERS | 1 | | | | |
| PART IV—LIABILITY INSURANCE | 1 | | **PART VII—CONDITIONS** | | 5 |
| A. | We Will Pay | | A. | Your Duties After Accident Or Loss—Filing A Claim (includes procedures you should follow in notifying us of any accident or loss) | |
| B. | We Will Also Pay | | | | |
| C. | We Will Not Cover—Exclusions | | | | |
| D. | Who Is An Insured | | B. | Other Insurance | |
| E. | Our Limit Of Liability | | C. | Our Right To Recover From Others | |
| F. | Out Of State Extensions Of Coverage | | D. | Cancelling This Policy During The Policy Period (includes procedures by which this policy may be cancelled by you or us) | |
| PART V—GARAGEKEEPERS INSURANCE | 3 | | | | |
| A. | We Will Pay | | E. | Legal Action Against Us | |
| B. | We Will Also Pay | | F. | Inspection | |
| C. | We Will Not Cover—Exclusions | | G. | Changes | |
| D. | Who Is An Insured | | H. | Transfer Of Your Interest In This Policy | |
| E. | Our Limit Of Liability | | I. | No Benefit To Bailee—Physical Damage Insurance Only | |
| PART VI—PHYSICAL DAMAGE INSURANCE | 4 | | J. | Bankruptcy | |
| A. | We Will Pay | | K. | Appraisal For Physical Damage Losses | |
| B. | We Will Also Pay (Not Applicable to Dealers) | | L. | Two Or More Policies Issued By Us | |
| C. | We Will Not Cover—Exclusions | | | | |

**IMPORTANT:** This Quick Reference is not part of the Garage Policy and does not provide coverage. Refer to the Garage Policy itself for the actual contractual provisions.

**PLEASE READ THE GARAGE POLICY CAREFULLY.**

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1977, 1979.

In return for the payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## PART I — WORDS AND PHRASES WITH SPECIAL MEANING — READ THEM CAREFULLY.

The following words and phrases have special meaning throughout this policy and appear in boldface type when used:

A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

B. "We", "us" and "our" mean the company providing this insurance.

C. "Accident" includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended.

D. "Auto" means a land motor vehicle, trailer or semi-trailer.

E. "Bodily injury" means bodily injury, sickness or disease including death resulting from any of these.

F. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the autos indicated in PART II as covered autos. Garage operations also include all operations necessary or incidental to a garage business.

G. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

H. "Loss" means direct and accidental loss or damage.

I. "Products" means the goods or products you made or sold in a garage business.

J. "Property damage" means the damage to or loss of use of tangible property.

K. "Trailer" includes semitrailer.

L. "Work you performed" includes work that someone performed for you.

## PART II — WHICH AUTOS ARE COVERED AUTOS.

A. ITEM TWO of the declarations shows the autos which are covered autos for each of your coverages. The numerical symbols explained in ITEM THREE of the declarations describe which autos are covered autos. The symbols entered next to a coverage designate the only autos that are covered autos.

B. **OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS.**

1. If symbols "21", "22", "23", "24", "25" or "26" are entered next to a coverage in ITEM TWO, then you already have coverage for autos of the type described until the policy ends.
2. But, if symbol "27" is entered next to a coverage in ITEM TWO, an auto you acquire will be a covered auto for that coverage only if:

   a. We already insure all autos that you own for that coverage or it replaces an auto you previously owned that had that coverage; and
   b. You tell us within 30 days after you acquire it that you want us to insure it for that coverage.

C. **CERTAIN TRAILERS.**
If the policy provides liability insurance, trailers with a load capacity of 2,000 pounds or less are covered autos for liability insurance.

## PART III — WHERE AND WHEN THIS POLICY COVERS.

We cover bodily injury, property damage or losses that occur during the policy period:

A. In the United States of America, its territories or possessions, Puerto Rico or Canada or while the covered auto is being transported between any of these places.

B. Anywhere in the world if the bodily injury or property damage is caused by one of your products which is sold for use in the United States of America, its territories or possessions, Puerto Rico or Canada. The original suit for damages resulting from such bodily injury or property damage must be brought in one of these places.

## PART IV — LIABILITY INSURANCE.

A. **WE WILL PAY.**

1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from

Page 1

We may investigate and s    : any claim or suit as we consider appropriate. Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.

B. **WE WILL ALSO PAY.**
In addition to our limit of liability we will pay for the insured:

1. Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an accident we cover. We do not have to furnish these bonds.
2. Premiums on appeal bonds in any suit we defend.
3. Premiums on bonds to release attachments in a suit we defend but only for bonds up to our limit of liability.
4. All costs taxed against the insured in a suit we defend.
5. All interest accruing after the entry of the judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limit of liability.
6. Up to fifty dollars per day for loss of earnings (but not other income) because of attendance at hearings or trials at our request.
7. Other reasonable expenses incurred at our request.

C. **WE WILL NOT COVER — EXCLUSIONS.**
This insurance does not apply to:

1. Liability assumed under any contract or agreement except under a lease of a premises, an easement, sidetrack agreement or an elevator maintenance agreement.
2. Any obligation for which the insured or his or her insurer may be held liable under any

garage operations.

2. We have the right and the duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy.

workers' compensation or disability benefits law or under any similar law.

3. Any obligation of the insured to indemnify another for damages resulting from bodily injury to the insured's employee.
4. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.
5. Bodily injury to any fellow employee of the insured arising out of and in the course of his or her employment.
6. Property damage to property owned or held for sale or being transported by the insured or in the insured's care, custody or control.
7. Any covered auto while leased or rented to others. This exclusion does not apply to a covered auto you rent to one of your customers while his or her auto is left with you for service or repair.
8. Bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.
9. Covered auto while used in any professional or organized racing or demolition contest or stunting activity. This insurance also does not apply while the auto is being prepared for such a contest or activity.
10. Any watercraft or aircraft.
11. Property damage to any of your products or any part of your products if caused by a defect existing at the time it was sold or transferred to another.

12. Property damage to work you performed if the property damage results from any part of the work itself or from the parts, materials or equipment used in connection with the work.
13. Loss of use of other property not physically damaged if caused by:
    a. Your delay or failure in performing any agreement or contract.
    b. The failure of your products or work you performed to meet the quality warranted or the level of performance represented. However, this exclusion, 13b, does not apply if the loss of use was caused by sudden and accidental damage to or destruction of your products or work you performed after they have been put to use by someone other than the insured.
14. Damages claimed because of the recall of your products or work you performed or other property of which they form a part due to a known or suspected defect or deficiency they contain.

D. WHO IS AN INSURED.
    1. For Covered Autos.
       a. You are an insured for any covered auto.

**Page 2**

pally garaged  e or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.
       c. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own.
    2. For Garage Operations Other Than Covered Autos.
       a. You are an insured.
       b. Your employees, directors or shareholders are insureds but only while acting within the scope of their duties.

E. OUR LIMIT OF LIABILITY.
    1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of LIABILITY INSURANCE shown in the

**Page 3**

b. Anyone else is an insured while using with your permission a covered auto except:
    (1) The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.
    (2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is your garage operations.
    (3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of yours:
        (a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.
        (b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is princi-

...declarati  However, we will deduct $100 from the damages in any accident resulting from property damage to an auto as a result of work you performed.
    2. All bodily injury and property damage resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one accident.

F. OUT OF STATE EXTENSIONS OF COVERAGE.
    1. While a covered auto is away from the state where it is licensed we will:
       a. Increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered auto is being used.
       b. Provide the minimum amounts and types of other coverages, such as "No-fault", required of out of state vehicles by the jurisdiction where the covered auto is being used.
    2. We will not pay anyone more than once for the same elements of loss because of these extensions.