# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1914

_____

| | | |
|---|---|---|
| Farmers Insurance Company, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Alexandros P. Pierrousakos; Wanda | * | Eastern District of Missouri. |
| Ford; Brian Worrall; Dan Brothers; | * | |
| Trudy Brothers, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: January 12, 2001

Filed: June 29, 2001

_____

Before LOKEN and HEANEY, Circuit Judges, and BATAILLON,* District Judge.

_____

LOKEN, Circuit Judge.

Appellees were seriously injured when Jeffrey Koch, driving an automobile owned by William Worrall, fell asleep at the wheel and collided with another vehicle driven by Wanda Ford. Worrall's insurer, Farmers Insurance Company ("Farmers"), commenced this diversity action by filing a petition in interpleader in the district court.

---

*The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

Farmers seeks a declaration that its liability under the automobile policy issued to Worrall is limited to $50,000 for this occurrence because driver Koch was not a member of Worrall's family. Appellees counterclaim for the policy's otherwise-applicable per-occurrence liability limit of $500,000. Concluding that the location of the lower limit in the policy document created an ambiguity, the district court held that the higher limit applies and ordered Farmers to pay an additional $450,000. Farmers appeals. In our view, the policy unambiguously limits Farmers's liability to $50,000 for bodily injuries caused by this accident. Accordingly, we reverse.

The Farmers policy contains four broad coverage parts, Liability, Uninsured Motorist, Medical, and Damage to Your Car. This appeal concerns Part I, the Liability coverage part. The provisions in Part I are organized into eight subheadings entitled Coverage A and B, Additional Definitions, Supplementary Payments, Exclusions, Limits of Liability, Out of State Coverage, Conformity with Financial Responsibility Laws, and Other Insurance. The primary insuring clause appears at the beginning of Part I, just below the Coverage A and B subheading:

> We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car**.

(Emphasis in the original.) Under the following subheading, entitled Additional Definitions, "insured person" is defined to include, "You or any **family member**," and, "Any person using **your insured car**." (Emphasis in the original.) It is undisputed that driver Koch was an insured person at the time of the accident. Relying on these provisions, and on the policy limit of $500,000 of bodily injury coverage per occurrence, which appears on the declarations page of Worrall's policy, appellees argue the district court was correct in ordering Farmers to pay $450,000, the policy limit less the $50,000 that Farmers paid into court in commencing this interpleader action.

-2-

On the other hand, Farmers relies on the second of four paragraphs that appear under the Other Insurance subheading at the end of Part I:

> We will provide insurance for an **insured person** other than you or a **family member**, up to the limits of the Financial Responsibility Law only.

(Emphasis in the original.) This provision, known as a "step-down clause,"[1] is commonly used to limit the insurer's risk in covering unknown drivers who use an insured automobile with the named insured's permission. Under the Missouri financial responsibility law, the minimum bodily injury coverage limit is $50,000 per occurrence. See Mo. Stat. Ann. § 303.190.2(2). As it is undisputed that driver Koch was not a member of Worrall's family, Farmers argues its liability for bodily injuries caused by this accident is limited to $50,000.

The district court refused to enforce the step-down clause, concluding that its location in the policy created an ambiguity that must be construed against the insurer. "Given the placement of the subject 'step-down' clause," the court explained, "a reasonable person reading the policy as a whole, would not understand the clause to provide an additional limitation on coverage since it is not listed as an 'exclusion' or as a 'limit of liability.'" On appeal, Farmers argues that the step-down clause is clear and unambiguous, and therefore Missouri law requires that we enforce its lower liability limits. Under Missouri law, construction of insurance policies and other contracts is an issue of law we review de novo. Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 590 (8th Cir. 1997).

---

[1]Farmers refers to this provision as a "drop-down" clause, but the district court suggested that "drop-down" is a term more appropriately used when an excess insurance carrier provides coverage. This debate over terminology does not affect our disposition of the appeal.

Absent contrary public policy, an unambiguous insurance contract is enforced as written. Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992). Step-down clauses do not violate Missouri public policy. See Windsor Ins. Co. v. Lucas, 24 S.W.3d 151, 154-55 (Mo. App. 2000). Thus, the issue is whether the step-down clause in the Farmers policy is ambiguous. Policy language "is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." Krombach, 827 S.W.2d at 210; see Rodriguez v. General Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991). In determining whether an ambiguity exists, "[a]ll provisions of a policy . . . must, if possible, be harmonized and given effect in order to accomplish the intention of the parties." Automobile Club Inter-Ins. Exchange v. Farmers Ins. Co., 778 S.W.2d 772, 774 (Mo. App. 1989) (citations omitted).

Appellee Brian Worrall argues that the language of the step-down clause is ambiguous because the primary insuring clause begins, "We will pay *damages* for which any insured person is legally liable," while the step-down clause begins, "We will provide *insurance* [for a permissive user]" (emphasis added). The district court concluded this difference in wording might extend coverage to a claim for damages *by* a permissive user, but it did not make the limits on coverage for claims *against* a permissive user ambiguous. We agree. The step-down clause refers to the "insurance" being "provided" to a permissive user. The clause appears in the Part I - Liability section of the policy, so it plainly refers to the liability coverages provided in that section, including all applicable exclusions and limits of liability. This exact step-down language was held to be unambiguous in Mid-Century Insurance Co. v. Haynes, 267 Cal. Rptr. 248, 250 (Cal. Ct. App. 1990), and the Missouri Court of Appeals concluded that a similar step-down clause was unambiguous in Windsor Insurance Co. v. Lucas, 24 S.W. 3d at 153-54. Likewise, we conclude that the step-down clause at issue,

standing alone, unambiguously limits the policy's coverage to $50,000 of bodily injuries caused by this occurrence.[2]

Turning to the main issue on appeal, appellees argue that the location of the step-down clause creates an ambiguity and compels us to disregard the clause's lower limit of per-occurrence liability. Appellees rely on McRaven v. F-Stop Photo Labs, Inc., 660 S.W.2d 459 (Mo. App. 1983), where the Missouri Court of Appeals rejected the insurer's argument that one exclusion should be construed as limiting an exception to another exclusion. The two exclusions were separated by nine other exclusion paragraphs in the policy. To be read in tandem as the insurer contended, the court explained, the two exclusions "should have been physically placed so that any reasonable person in the position of the insured would have understood that they be read together." 660 S.W.2d at 462 (citation omitted). Appellees argue that placement of the step-down clause under the "Other Insurance" subheading of Part I prevents the insured from finding that limitation.

We believe the Supreme Court of Missouri would construe McRaven more narrowly. In Harrison v. MFA Mutual Insurance Co., 607 S.W.2d 137, 142 (Mo. 1980), the Court rejected the argument that a coverage-limiting provision was rendered ambiguous by its location: "Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." Likewise, in Automobile Club, 778 S.W.2d at 775, the Missouri Court of Appeals distinguished McRaven and rejected an ambiguity-by-location

---

[2]Citing language in Behr v. Blue Cross Hospital Service, Inc., 715 S.W.2d 251, 256 (Mo. 1986), out of context, Worrall further argues that a policy is always ambiguous if it grants insurance at one point but takes away or limits it at another. This contention was expressly rejected by the court in Windsor, 24 S.W.2d at 154. In Part I of the Farmers policy, the step-down clause modifies the primary insuring clause. There is no patent inconsistency between the two provisions.

argument in enforcing a policy provision that excluded coverage for a person who used an insured vehicle without the owner's permission.

In this case, the Part I coverage section extends for two-and-one-half pages of the policy. For clarity and ease of reading, Farmers subdivided the section with eight subheadings. The question appellees raise is where the step-down clause should be located. It does not logically fall within the "Exclusions" subheading, because it does not totally exclude any coverage. It might logically be located under the Limits of Liability subheading, but Farmers points out that the step-down clause is unlike all the other limits set forth under that subheading because they apply equally to all insured persons. Instead, Farmers placed the step-down clause under the Other Insurance subheading, immediately below a clause stating that, when there is other applicable insurance, "[o]ur share is the proportion that our limits of liability bear to the total of all applicable limits." Farmers notes that permissive users frequently have other insurance -- their own separate coverage -- in which case the step-down clause is relevant in establishing the Farmers "share" of the total coverage.

Farmers' explanation for its placement of the step-down clause is rational. That dispels any inference that this coverage limitation was intentionally "hidden" where insureds would not find it. Thus, appellees are left with the argument that this unambiguous provision should not be given effect because it is relatively difficult to find. We conclude the Supreme Court of Missouri would not permit this contention to vary the plain meaning of an insurance contract. Under Missouri law, contracts are to be construed as a whole. That means parties to a contract are expected to read the entire agreement and to understand its unambiguous provisions. As the court said in rejecting an ambiguity-by-location argument in Automobile Club, 778 S.W.2d at 775,

"We shall neither pervert language nor exercise inventive powers for the purpose of creating an ambiguity when none exists."

The judgment of the district court is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.