OPINION.
{¶ 1} Intervening plaintiff-appellant Mid-Century Insurance Company ("Mid-Century") has appealed from the trial court's grant of summary judgment in favor of plaintiffs-appellees Cheryl Hughes, Daniel Long ("Daniel Long"), and Elissa McRae. For the following reasons, we affirm the trial court's judgment.
 I. Factual Background {¶ 2} This action arose from an automobile accident caused by defendant Daniel Clyde Long ("Long"). Long was operating a vehicle owned by defendant Ovellar McRae. While driving, he drifted left of center and struck Hughes's car. Hughes suffered injuries, as did the three passengers in the car driven by Long. Long's passengers included his minor son Daniel Long, Elissa McRae, and Deasia Matthews.[1]
 {¶ 3} Hughes, McRae, Matthews, and Daniel Long filed suit, seeking to invoke coverage under the policy insuring the automobile that Long was driving. Ovellar McRae's car was insured under an E-Z Reader policy through Mid-Century. The present litigation focuses on two endorsements contained in the E-Z Reader policy. We discuss these endorsements in detail below, but initially it is sufficient to state that the endorsements attempted to limit coverage for "permissive users" of the insured automobile. Relying on these endorsements, Mid-Century filed a motion for summary judgment, arguing that because Long was a "permissive user," the plaintiffs were only entitled to limited policy coverage. Hughes and Daniel Long filed cross-motions for summary judgment. They argued that the policy endorsements should not be given effect because they were ambiguous.
 {¶ 4} The trial court denied Long's motion for summary judgment and granted the motions filed by Hughes and Daniel Long. The trial court concluded that the endorsements were ambiguous, misleading, and inconspicuous. After determining that the endorsements could not be enforced, the trial court held that the plaintiffs were entitled to full liability benefits under the policy.
 {¶ 5} Mid-Century has appealed from the trial court's judgment. In its sole assignment of error, Mid-Century argues that the trial court erred in denying its motion for summary judgment and in granting summary judgment to the plaintiffs. More specifically, Mid-Century argues that the endorsements at issue were not ambiguous and should have been given effect.
 II. Standard of Review {¶ 6} This court reviews grants of summary judgment de novo, without any deference to the trial court's decision.[2]
Summary judgment may appropriately be granted only when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the non-moving party, permits only one reasonable conclusion that is adverse to the non-moving party.[3]
 III. E-Z Reader Insurance Policy? {¶ 7} Because the language and organization of Mid-Century's insurance policy are the focus of the party's dispute, it is necessary to discuss in detail the policy and the endorsements at issue. We focus our analysis on the policy provisions applicable in the present situation. The inescapable conclusion that we draw from our analysis of the policy is that "E-Z Reader" it is not!
 {¶ 8} The policy begins with a declarations page. This page contains the insured's name and the policy number, as well as a description of the insured vehicle. It specifically lists the limits of liability for typical bodily injury and uninsured-motorist coverage. The declarations page also contains a box labeled "Endorsement Numbers," which lists 12 numbers, each denoting different endorsements.
 {¶ 9} The fourth page of the policy is entitled "Your Policy At-A-Glance." It contains a breakdown of all the major sections of the policy. The last section listed is referred to as endorsements/mandatory notices. This page solely contains titles of the various sections, and no description of the sections' content is included.
 {¶ 10} This page is followed by an index of policy provisions. The bottom of the index page states, all in capital letters but in a font the same size as the rest of the page, "Any additional provisions affecting your policy are attached as `endorsements'." Subsequent to the index is a page of definitions, succeeded by numerous pages consisting of the general substantive terms of the policy.
 {¶ 11} The actual endorsements are contained at the end of the policy. The two endorsements at issue are endorsement E1148 and endorsement S2514. Endorsement E1148 is titled "Part 1 — Liability — Other Insurance." This title is written in bold, capital letters that are slightly larger than the font of the body of the endorsement. The endorsement states, "We will provide insurance for an insured person, other than you or a family member, up to the limits of your state's Financial Responsibility Law only of $12,500 per person and $25,000 per occurrence for bodily injury."
 {¶ 12} S2514 is titled "Part 1 — Liability — Permissive User Limitation." The title is also written in bold, capital letters, slightly larger than the font in which the body of the endorsement is printed. The endorsement is almost identical to E1148, and it states, "We will provide insurance for an insured person, other than you, a family member or a listed driver, butonly up to the minimum required limits of your state's Financial Responsibility Law of $12,500 per person and $25,000 per occurrence for bodily injury * * *." (Emphasis added.) This endorsement also partially amends the definition of insured person to include listed drivers, and it also defines the term "listed driver." E1148 and S2514 are located on separate pages; each endorsement is the only item on the page.
 {¶ 13} Because the endorsements appear to be redundant, we need to determine how Mid-Century intended them to be applied. According to the policy, an insured person is generally covered to the full extent.[4] The applicable section of the policy defines insured person as including "you or any family member" and "any person using your insured car." It further states that an insured person does not mean "any person who uses a vehicle without having sufficient reason to believe that the use is with the permission of the owner."
 {¶ 14} Through the use of the endorsements, Mid-Century attempts to create an exception to the full coverage available for insured persons. E1148 states that any insured person, other than the named insured or a family member, will receive limited coverage. Thus, any other person using the insured car with the permission of the owner receives this limited coverage (hence the term "permissive user limitation"). S2514 carves an exception to the rule stated in E1148. S2514 provides that any person listed on the policy as being rated to drive the insured car will also be entitled to full coverage. Thus, read together, E1148 and S2514 indicate that any driver using the car with the permission of the owner will receive limited coverage if that driver is not the named insured, a family member, or a listed driver.
 IV. Effectiveness of Endorsements {¶ 15} We must determine whether the endorsements effectively limited coverage in this situation. We note that insurance contracts susceptible to more than one interpretation should be strictly construed in favor of the insured.[5] Further, "an exclusion from liability must be clear and exact in order to be given effect."[6]
 A. Conspicuousness {¶ 16} Our review of the E-Z Reader policy convinces us that the endorsements are not conspicuous.
 {¶ 17} The policy's declarations page lists the monetary limits of liability for general bodily injury as well as for uninsured motorist coverage, but it does not list the limited coverage for permissive users. Because two specific categories of coverage are listed, it is not unreasonable for an average reader to assume that the listed amounts are the only two categories of coverage available, and that the policy contains no other coverage limitations. Mid-Century could feasibly have included the limited coverage amounts for permissive users on this page. Such inclusion would have taken limited space, and it would have ensured a policy holder's familiarity with all the coverage limitations.
 {¶ 18} A reader garners no indication that the endorsements could possibly limit coverage until the policy's index page is reached. This is the fifth page of the policy, although it is labeled as page one. Underneath the index of policy provisions, at the bottom of the page, the policy states, "Any additional provisions affecting your policy are attached as `endorsements' * * * [i]t contains certain exclusions." These statements are typed in capital letters, and a reader's eye is simultaneously drawn to references to endorsements and exclusions.
 {¶ 19} Although the index page does refer to the endorsements, the body of the insurance policy does not adequately explain or indicate how the endorsements affect the policy. The policy is divided into various sections. The first section, at issue in the case at bar, is entitled "Liability." This liability section contains a small subsection entitled "additional definitions used in this part only." As we have already noted, this is where the policy defines the term "insured person." The stated definition of insured person gives the reader no indication that this definition is not applicable at all times, or that the subset of "any person[s] using your insured car" is not always entitled to full coverage. Any intentional limitation of coverage would most appropriately have been listed here.
 {¶ 20} Further, although this liability section contains subsections designated "exclusions" and "limits of liability," neither subsection contains the permissive-user limitation present in endorsements S2514 and E1148. We find this absence notable, as these two subsections would also be an ideal location to place the permissive-user limitation. A policy holder seeking to determine if the policy contains any exclusions or limitations would without doubt refer to these subsections for clarification. An average reader would not think to check the endorsements for applicable limitations or exclusions when the policy contains separate sections designated for these topics.
 {¶ 21} It would not have been onerous for Mid-Century to amend the policy so that it more conspicuously reflected what sections were affected by endorsements. In these relevant subsections regarding exclusions and limits of liability, a reference or allusion to the endorsements would have sufficed. This would have attracted the reader's attention, and the reader could then have referred to the endorsement for the substance of the limitation or exclusion. As well as referring to the endorsements in these two subsections, Mid-Century could have also made the endorsements more conspicuous by referring to them when defining "insured person" in the liability section of the policy. Mid-Century would have only needed to briefly mention that other sections of, or endorsements to, the policy might amend the definition of insured person. This would have informed the policy holder of the possibility that the listed categories of insured persons might not always be entitled to full coverage, and might have been the first step towards a genuine "E-Z Reader" policy.
 {¶ 22} Our reasoning is supported by the California Supreme Court's decision in Haynes v. Farmers InsuranceExchange.[7] The Haynes court analyzed a virtually identical endorsement contained in a Farmers "E-Z Reader" insurance policy.[8] Upon holding that the endorsement was not conspicuous, the court stated that "[t]he definition of the insured, appearing at the outset of the liability section, gives every indication that a permissive driver stands in the same position as the insured and receives the same coverage."[9]
 {¶ 23} The Haynes court further concluded that Farmers could have feasibly listed the actual dollar coverage for permissive users on its declarations page.[10] The court reasoned that by listing only alphanumeric designations for the endorsements, Farmers did not adequately inform a policy holder that the endorsement limited coverage.[11]
 {¶ 24} In summary, similar to the policy in Haynes,
Mid-Century's E-Z Reader insurance policy does not conspicuously indicate that the endorsements contain such a severe limitation of liability, nor does it adequately designate which sections are affected by the endorsements.[12] Because the endorsements are not conspicuous, we conclude that the trial court correctly declined to give them effect. Since the endorsements have no effect, and because Long was using the car with the permission of the owner, he was an insured person and the plaintiffs are entitled to full coverage.
 {¶ 25} Our conclusion regarding the conspicuousness of the endorsements is dispositive. But because the trial court relied on numerous aspects of the policy in declining to enforce the endorsements, we briefly address several other potential issues for future guidance.
 B. Location of the Endorsements {¶ 26} Mid-Century placed all endorsements at the end of the insurance policy. Although we are persuaded that a permissive-user limitation should have been placed, or at the very least referred to, in the liability subsections discussing exclusions and limitations of liability, we cannot conclude that the endorsements are inconspicuous merely because they are the last item appearing in the policy. It goes without saying that something must always be last. Had the endorsements been properly referred to in the appropriate sections throughout the policy, they would not have been inconspicuous solely because they are the last items attached.
 C. Ambiguity of the Endorsements {¶ 27} The trial court found that both endorsements at issue are ambiguous. We disagree. Although the term "permissive user" is not explicitly defined in the policy, we conclude that an average reader would have no difficulty discerning that a permissive user is one using the car with permission. Other definitions contained in the policy support our interpretation of the term. The liability section of the policy states, "Insured person does not mean * * * [a]ny person who uses a vehicle without having sufficient reason to believe that the use is with the permission of the owner." Thus, the policy indicates that a permissive user is one who uses the car with the permission of the owner. An average reader could determine this definition from the policy relatively easily, without excessive cross-referencing. This term is not ambiguous.
 {¶ 28} We further conclude that the actual language used in the endorsements to limit coverage is not ambiguous. After reading the entire text of the endorsements, an average reader would understand their effect.
 {¶ 29} However, the title of endorsement E1148 gives us pause. The endorsement is titled "Part 1-Liability-Other Insurance," and it appears in capital letters. Directly underneath the title is the phrase "Permissive User Limitation Endorsement." This phrase is in a smaller font and is not printed in capital letters. This title is ambiguous, and it does not indicate to the policy holder the effect of the endorsement. An average reader, after viewing the title, would conclude that the endorsement applied when some other type or policy of insurance was involved in the situation. Because this title is susceptible to more than one interpretation, it must be strictly construed in favor of the insured.
 {¶ 30} Mid-Century urges us to rely on a federal case from the Eighth Circuit Court of Appeals, Farmers Ins. Co. v.Pierrousakos.[13] In this case, the Eighth Circuit analyzed a similar step-down clause limiting coverage for permissive users. The court specifically discussed the clause's placement in a subheading entitled "other insurance" and concluded that no ambiguity resulted from placing the provision under such a subheading.[14] The court accepted Farmers's reasoning that "permissive users frequently have other insurance — their own separate coverage — in which case the step-down clause is relevant in establishing Farmers `share' of the total coverage."[15]
 {¶ 31} While we accept that this may be a valid rationale for placing a permissive-user limitation under such a subheading, we nonetheless conclude that it results in an ambiguity. The endorsement applies regardless of whether the permissive driver has other insurance. Upon viewing the title "other insurance," a policy holder would not be informed that the endorsement limited coverage for permissive users of the vehicle.
 {¶ 32} Interestingly, endorsement S2514, although not conspicuously referred to throughout the policy, is clearly titled as "Part 1-Liability-Permissive User Limitation." The title of this endorsement plainly indicates to the reader that it contains a policy exclusion applicable when the vehicle is controlled by a permissive user. We question why E1148 and S2514 are titled differently when they attempt to accomplish the same purpose.
 V. Conclusion {¶ 33} The potential effect of endorsements E1148 and S2514 is not conspicuously indicated in the policy. Further, the title of endorsement E1148, other insurance, is ambiguous and implies that the endorsement is applicable when some other type of insurance is involved. Because both endorsements are inconspicuous, and because one endorsement is ambiguously titled, they cannot be enforced. Summary judgment was appropriately granted for Hughes, Daniel Long, and McRae. We accordingly affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Painter, J., concur.
[1] Matthews's claims have previously been settled and are not part of this lawsuit.
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241.
[3] State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589, 639 N.E.2d 1189.
[4] The E-Z Reader policy provides coverage for bodily injury up to $100,000 per person and $300,000 per occurrence.
[5] King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,211, 519 N.E.2d 1380.
[6] Lane v. Grange Mutual Cos. (1989), 45 Ohio St.3d 63, 65,543 N.E.2d 488.
[7] (2004), 32 Cal.4th 1198, 89 P.3d 381.
[8] Mid-Century Insurance is a subsidiary of Farmers Insurance Company.
[9] Haynes v. Farmers Ins. Exchange, 32 Cal.4th at 1208, citing Jauregui v. Mid-Century Ins. Co. (1991),1 Cal.App.4th 1544, 1549, 3 Cal.Rptr.2d 21.
[10] Id.
[11] Id. at 1206-1207.
[12] Mid-Century refers us to an Ohio Supreme Court case in which the court upheld a permissive-user limitation. See Cook v.Kozell (1964), 176 Ohio St. 332, 199 N.E.2d 566. But we find that this case is inapplicable as it involved a garage liability policy, and both the policy and the endorsement in Cook
contained different language than the policy and the endorsement presently before us.
[13] (C.A.8, 2001), 255 F.3d 639.
[14] Id. at 643-644.
[15] Id. at 644.